UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Rajeev Pahuja

                   Plaintiff,

American University of Antigua c/o Greater
Caribbean Learning Resources,


------------------------------------------------------------------X

11 Civ. 4607

NOTICE OF MOTION TO
DISMISS

| | |
|---|---|
| **MOVANT:** | Defendant, American University of Antigua |
| **DATE, TIME, AND PLACE OF MOTION:** | July 31, 2012<br>U.S. District Court, Southern District<br>500 Pearl Street<br>New York, New York 10007-0136 |
| **SUPPORTING PAPERS:** | Affirmation of Leonard A. Sclafani, Esq. dated 6/14/12 with supporting exhibits, |
| **RELIEF REQUESTED:** | An order dismissing this action pursuant to FRCP 12 for lack of jurisdiction over the person of defendant, for failure to name and indispensible party, for failure timely to serve the summons and complaint and for failure to state a claim against defendant on which relief may be granted. |

**DATED:**      NEW YORK, NEW YORK
                    June 15, 2012

YOURS ETC.

LEONARD A. SCLAFANI, Esq. ls8306
Law Offices of Leonard A. Sclafani,
One Battery Park Plaza, 33rd Fl.
New York, New York 10004
212-696-9880
l.a.s@mindspring.com

To: Rajeev Pahuja
    55 Duel Drive
    Hamden, CT 06518

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RAJEEV PAHUJA,

Index #11 Civ. 4607(PAE)

**AFFIRMATION OF
LEONARD A. SCLAFANI,ESQ.
IN SUPPORT OF MOTION TO
DISMISS**

Plaintiff

-against-

AMERICAN UNIVERSITY OF ANTIGUA c/o GREATER
CARIBBEAN LEARNING RESOURCES,

Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - ---X

Leonard A. Sclafani, Esq. hereby affirms under penalty of perjury as follows:

1.   I am an attorney duly admitted to practice before this Court. I am a member

of the firm of Leonard A. Sclafani, P.C., attorneys for defendant American

University of Antigua (hereinafter "AUA") herein. I am also Senior Vice

President and General Counsel of Manipal Education Americas, LLC, f/k/a

GCLR, LLC, a New York limited liability company. (Because, during the entire

period of time relevant to this action, Manipal Education Americas, LLC was

known as GCLR, LLC, hereinafter  your affiant will refer to that entity as GCLR,

LLC.)  As hereinafter more fully set forth, it was GCLR, LLC, and not either of

defendant American University of Antigua or the wholly separate entity

known as "Greater Caribbean Learning Resources" that employed plaintiff and

whose discharge of plaintiff underlies his suit herein. As such, I am fully

familiar with all of the facts and circumstances surrounding this matter and hereinafter set forth.

2. I submit this affirmation in support of defendant AUA's within motion made pursuant to FRCP 12, for dismissal of this action on jurisdictional grounds, because plaintiff has failed to name and join a necessary and indispensible party, for failure to state a claim on which relief may be granted and because plaintiff's prior election of remedies.

The Facts Underlying Plaintiff's Claims Herein

3. Contrary to plaintiff's allegations, at no time was plaintiff ever employed by AUA, the only defendant named in this action. At all relevant times, plaintiff was employed, and ultimately was discharged, by GCLR, LLC for cause unrelated to any discrimination on the basis of plaintiff's sexual orientation, lack of marital status, disability, or other improper basis.

4. GCLR, LLC, was, and is, engaged in the business of providing administrative and back office services such as student recruitment, marketing, public relations, information technology, record retention, legal and financial services for institutions of higher education located throughout the world, as contracted for under Service Agreements with

those institutions. At all relevant times herein, AUA was, and is, one of GCLR's clients.

5. Your affiant is mindful that plaintiff has styled his suit as one against AUA "c/o Greater Caribbean Learning Resources; however, that latter entity, a Delaware limited liability company, was dissolved by its owners in 2008 upon purchase of its assets by GCLR, LLC, a New York limited liability company. GCLR, LLC is not a successor in interest to, or affiliate or subsidiary of, the former entity Greater Caribbean Learning Resources. It is a wholly separate entity with, for the most part, different owners/members, officers, directors and management. Notably, GCLR, LLC was not named as a defendant in this suit, notwithstanding that it was this entity that hired and fired plaintiff.

6. AUA was, and is, a university located in, chartered by, and existing under and by virtue of, the laws of, Antigua and Barbuda, a sovereign nation located in the West Indies. At the time of plaintiff's employment with GCLR, LLC, AUA offered an undergraduate program of education leading to Bachelor's and Associate's Degrees in Science (BSc. and ASc., respectively), a graduate program of education leading to the Medical Doctorate (MD) degree, an undergraduate program of education leading

3

to the Associate's in Science Degree, Nursing (ASc.N) and a graduate program of education leading to the Doctor of Veterinary Medicine (DVM) Degree, among other educational programs. All of these programs, with the exception of the clinical training portions of the two doctorate programs above listed were taught at, and on, AUA's campus in Antigua.

7. AUA maintains no offices in the United States. All of its business in the United States was, and is, conducted under and through contracts with third party vendors such as Manipal Education Americas, LLC.

8. On or about April 21, 2009, plaintiff was hired by GCLR, LLC to serve as a supervisor of recruiters for AUA's School of Nursing. His title was "Senior Associate Director of Admissions" inasmuch as the recruiters who was to supervise were known as "Assistant Directors of Admissions" for AUA's nursing school. His immediate supervisor was Marie McGillicuddy, then, "Regional Director of Admissions." Like plaintiff, Ms. McGillicuddy was employed by GCLR, LLC, not AUA. She was, at the time, responsible for recruitment of students for GCLR's clients in the Caribbean Region, of which AUA was one, and, more particularly, for the supervision, hiring and firing of recruiters of

students for GCLR, LLC's clients in the Caribbean region and their support staff.

9. For reasons set forth in Ms. McGillicuddy's affidavit sworn to on August 9, 2009 (hereinafter, the McGillicuddy affidavit)(Exhibit "A" annexed), which was submitted to the New York State Department of Human Rights in partial response of AUA to the claims of discrimination made by plaintiff to that agency prior to the commencement of this action, plaintiff's employment with GCLR, LLC was terminated for cause on or about June 5, 2009.

10. As Ms. McGillicuddy attests in factual detail in her affidavit, among the reasons for GCLR, LLC's termination of plaintiff's employment were his inappropriate behavior and conduct toward those with whom he was required to interact, including, but not limited to, his superiors, those who he was tasked to supervise, both then current, and then perspective students of AUA and their families and outside vendors; his utter lack of ability to develop appropriate rapport with his colleagues, AUA faculty and administrative staff, and most importantly, those who he was charged with recruiting, and due to his incompetence on matters for which he should have required minimal or no training given the

5

nature of his job and the prerequisite experience that he represented that he had in similar jobs before GCLR hired him.

11. Also, as Ms. McGillicuddy attests and documents in and through her affidavit, it was not until after he was terminated by GCLR, LLC that plaintiff ever advised that he suffered from any disability; nor did he complain to the New York State Division of Human Rights or any other agency that the termination of his employment was due to discrimination on the basis of his claimed sexual orientation or lack or marital status until long after the proceedings before the Human Rights Division were under way.

12. Indeed, as Ms. McGillicuddy attests and documents, the only evidence that plaintiff ever provided to the New York State Division of Human Rights in support of his claim that he had notified his employer (AUA, according to plaintiff) prior to his termination that he suffered from a disability and required an accommodation was an email that plaintiff fraudulently altered to make it appear that it had included a sentence to the effect that plaintiff suffered from attention deficit syndrome, when , in fact, the actual email contained no such statement.

13. On or about July 22, 2009, plaintiff filed his complaint with the New York State Division of Human Rights alleging unlawful discrimination on the basis of his alleged disability.

14. It was not until February 25, 2010, seven months after he filed his original complaint, that plaintiff filed an amendment of that complaint with the New York Division of Human Rights under which plaintiff asserted for the first time that he was fired because of his employer's perception about his sexual orientation and because he was not married.

15. By separate affidavit of Marie McGillicuddy, sworn to on March 16, 2010 (Exhibit "B")(hereinafter, the "March 16 McGillicuddy affidavit"), AUA responded to plaintiff's new claim. Here, your affiant attested that plaintiff's employer, GCLR, LLC, employed over 70 people, some of whom were married, and some of whom were not and that neither marital status nor sexual orientation was or is a consideration in determining who it hires and who it continues to employ.

16. Plaintiff offered no evidence that even remotely tended to support his new allegations.

17. Having concluded its investigation of plaintiff's allegations, by "Determination and Order After Investigation," dated January 12, 2011 (Exhibit "C"), under which the New York State Division of Human Rights found that there was no probable cause to believe that respondent ha[d] engaged in or [was]engaging in the unlawful discriminatory practices complained of," the Human Rights Division dismissed plaintiff's complaint.

18. Significantly, among its findings was the finding that, as Ms. McGillicuddy had alleged and documented, not only had plaintiff not advised his employer prior to his termination of any disability from which he may have suffered, but, in order to support his otherwise unsupportable claims, he fraudulently altered and submitted to the Human Rights Division the above discussed email.

19. Thereafter, on March 31, 2011, the U.S. Equal Employment Opportunity Commission, by "Dismissal and Notice of Rights (Exhibit "D"), having adopted the findings of the New York State Division of Human Rights, dismissed on its merits plaintiff's claims.

<u>The Facts Supporting AUA's Within Motion to Dismiss</u>

20.   According to this Court's docket, plaintiff commenced this action by filing his complaint herein (Exhibit "E") on June 24, 2011.

21.   Thereunder, plaintiff purports to make claims against "American University of Antigua c/o Greater Caribbean Learning Resources" under the Americans with Disabilities Act of 1990, 42 U.S.C. 12112-12117 and the New York City Human Rights Law, NY.C. Admin. Code 8-101-131. He also claims to have been the victim of "retaliation".

22.   According to this Court's Order dated May 24, 2012 and the return of service of the U.S. Marshal (Exhibits "F" and "G" respectively), service of plaintiff's Summons and Complaint was purportedly made on the entity named as defendant in the suit by service upon your affiant at 2 Wall Street, 10th Fl., N.Y., N.Y. 10005-2043 on February 22, 2012.  The Marshall's return of service asserts that the service was made "by mail."

23.   As hereinafter more fully set forth, this service, if it occurred was insufficient, improper and ineffective.

24.   There are several reasons why plaintiff's complaint and/or the claims therein must be dismissed.

<u>Plaintiff has failed to join a</u>
<u>necessary and indispensible party</u>

25.   As above set forth, for reasons known only to him, plaintiff has failed to name or join in his action the entity that actually employed him and terminated his employment; GCLR, LLC.  For obvious reasons, GCLR, LLC was, and is, a necessary and indispensible party to plaintiff's action.

26.   It is inconceivable that plaintiff, whose position with his employer was a supervisory one, was, or is, unaware of the name and identity of the entity that employed him. At the time that he was hired, he completed employment forms, including tax forms, insurance forms and contact information, all bearing the name of his employer, GCLR, LLC.

27.   Throughout the entirety of his employment, he received his salary by checks drawn on the account of GCLR, LLC and prominently bearing its name and address thereon.

28.   He was given, and signed for, an Employee Handbook that also bore his employer's name, GCLR, LLC, prominently on its cover, and throughout the document itself.

29. Likewise, prominently displayed on the wall in the vestibule of GCLR, LLC's 2 Wall Street offices was signage identifying the offices as those of GCLR, LLC.

30. If the foregoing does not plainly establish that plaintiff knew who it was who employed him, but, nevertheless, willfully chose to name as the sole defendant in his action an entity other than that employer, one need look only to the affidavit of Marie McGillicuddy above discussed, which was submitted by AUA to the New York State Division of Human Rights and served on plaintiff in defense of plaintiff's claims before that agency. Ms. McGillicuddy's affidavit states explicit that plaintiff was not hired, employed or separated from his employer by AUA; but, instead was hired and fired by GCLR, LLC.

31. Nevertheless, plaintiff has continued through this action to advance his claims only against AUA.

 This Court lacks Jurisdiction
over the person of AUA; Plaintiff
has failed to make proper service on
any of AUA, GCLR, LLC or Greater
Caribbean Learning Resources

11

32. Despite the allegations set forth in the Marshall's return of service and the statement in this Court's May 24, 2012 Order, at no time were any of your affirmant, AUA, GCLR, LLC or Greater Caribbean Learning Resources ever served with plaintiff's summons and complaint.

33. As above set forth, at no time did AUA ever maintain offices in New York. More particularly, at no time did AUA ever occupy or maintain offices at 2 Wall Street, NY, NY, where the Marshall claims to have served your affirmant on behalf of AUA.

34. For some time up until mid September 2011, the offices on the 10th floor of 2 Wall Street, New York, New York, (the address to which the Marshall's return of service states process was mailed) were occupied by GCLR, LLC and your affiant, to whom the Marshall addressed his mailing, maintained my office on the 5th floor of that building. However, in mid September, 2011, GCLR, LLC moved its 10th floor, Wall Street offices, and I moved my 5th floor, @ Wall Street Offices, to One Battery Park Plaza. As of that time, my offices on the 5th floor of 2 Wall Street were sublet to, and occupied by, a law firm unrelated to any of AUA, GCLR, LLC, your affimant or Greater Caribbean Resources.  As of today's date, the offices on the 10th Floor of 2 Wall Street remain vacant.

35. To the extent that the US Marshall mailed or delivered any papers to anyone at 2 Wall Street on February 22, 2012 or on any day after mid-September 2011, he delivered them to someone other than your affirmant who had no relationship to any of AUA, Greater Caribbean Learning Resources or GCLR, LLC, or mailed them to an improper address other than that where any of AUA, Greater Caribbean Learning Resources, GCLR, LLC maintained their offices.

36. As such, there can be no issue that plaintiff failed to effect good and sufficient service of his summons and complaint on the named defendant, AUA, or on anyone else authorized to accept service on its behalf. The same would be true with respect to any claim that plaintiff might make that service was duly made on either of GCLR, LLC or Greater Caribbean Learning Resources, were he to argue that any of these entities should be substituted as a defendant in the place of AUA.

37. Neither does plaintiff allege, nor is it the case that, any of AUA, GCLR, LLC or Greater Caribbean Learning Resources ever waived service of plaintiff's summons and complaint upon them.

38.  Because plaintiff failed to effect due and sufficient service of his summons and complaint on the defendant named herein, or on any other person or entity associated with that defendant or authorized to accept service on its behalf, this Court lacks jurisdiction over the person of defendant, such that it must dismiss plaintiff's complaint.

<u>Plaintiff's Summons and Complaint was not timely served. The Court must dismiss this action for lack of personal jurisdiction over defendant.</u>

39.  Assuming arguendo that the Marshall had served AUA or Greater Caribbean Learning Resources, or even GCLR, LLC, on February 22, 2012 as is set forth in the Order of May 24, 2012 and the Marshall's return of service, because February 22, 2012 was more than 120 days after the day that plaintiff filed his complaint herein, the service would not have been made within the 180 day time set in Rule 4 of the FRCP for service of a summons and complaint in a civil action.

40.  To your affirmant's knowledge upon review of the Court's docket in this matter, neither had plaintiff sought, nor had the Court granted, an extension of plaintiff's time to serve his summons and complaint herein.

The adjudication of plaintiff's
claims under the NYC Human Rights
Law on their merits by the NYS
Human Rights Division constituted
an election of plaintiff's remedies.
plaintiff's claims under that law
are, accordingly, barred herein.

41. With respect to plaintiff's claim under the New York City Human Rights

Law, as set forth in the accompanying Memorandum of Law, plaintiff's

allowance of the New York State Human Rights Division to render its

determination of plaintiff's claims of discrimination on their merits

constituted an election of remedies that now bars plaintiff from raising

these same claims in these, or any other proceedings.

Plaintiff's complaint fails
to allege facts sufficient
to plead a claim of
retaliation

42. As for plaintiff's claim of "retaliation, " there are no facts plead in

plaintiff's complaint that come close to setting forth such a claim.

43. Accordingly, this Court must dismiss plaintiff's said claim.

WHEREFORE, plaintiff's claims herein must be dismissed, and costs,

disbursements and attorney's fees awarded to AUA together with such other

and further relief as this court deems just and equitable.

Leonard A. Sclafani, Esq. (ls8306)

EXHIBIT A

<u>**Respondent Contact Information**</u>

Return to:
**NYS Division of Human Rights**
**Housing Investigation Unit**
**One Fordham Plaza, Fourth Floor**
**Bronx, New York 10458**

Re:  Rajeev Pahuja v. American University of Antigua
     SDHR NO: 10135294

Correct legal name of Respondent: __GCLR, LLC__

Federal Employer Identification Number (FEIN): __56 265 1217__

Contact person for this complaint:

Name:  __Leonard A. Sclafani, Esq.__

Title:  __General Counsel__

Street Address:  __2 Wall Street - 5th Floor__

City/State/Zip:  __New York, New York 10005__

Telephone No:  __(212) 696-9880   212 661-8899 ext 187__

Do you have an attorney for this matter: Yes __X__ No____ If yes:

Attorney Name:  __See Above__

Firm:  _____

Street Address:  _____

City/State/Zip:  _____

Telephone:  (_____)_____

Will you participate in settlement/conciliation? Yes____ No __X__
If yes, for this purpose please contact:

Name: _____  Telephone:(_____)_____
(Settlement discussions will not delay the investigation and
participation in settlement does not provide good cause for an
extension of time to respond to the complaint.)

Signature _____    Date __8/3/09__

NEW YORK STATE
DIVISION OF HUMAN RIGHTS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RAJEEV PAHUJA

                                    Plaintiff

                    -against-

AMERICAN UNIVERSITY OF ANTIGUA

                                    Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Case #10135294

**RESPONSE OF GCLR, LLC
TO COMPLAINT OF
RAJEEV PAHUJA**

Marie McGillycuddy, being first duly sworn, deposes and says:

1.       I am, and at all relevant times was, employed by GCLR, LLC, a New York

limited liability company engaged in the business of providing administrative services such as

recruitment, admissions, records keeping, and retention, accounting and marketing services for

institutions of higher learning.   American University of Antigua (hereinafter "AUA") is, and at

all times was, a customer and client of GCLR, LLC.

2.       During the period relevant to the complaint of Rajeev Pahuja, I served as

Regional Director of Admissions for AUA under GCLR, LLC's contract with that entity.  I

currently serve as Director of Admissions for AUA under the same contract.  As such, I am fully

familiar with the facts and circumstances hereinafter set for.

3.       I submit this affidavit as and for the response of GCLR, LLC to the above

referenced complaint of  Rajeev Pahuja.  In this regard, I respectfully submit that, contrary to Mr.

Pahuja's complaint, his employment was not terminated due to any reason having anything to do with his claimed disability or any unwillingness or refusal of his employer to provide accommodations of any kind for his claimed disability.

4.     In fact, as is hereinafter set forth, at no time until after his employment was terminated did Mr. Pahuja ever advise me or anyone else at GCLR (or AUA) that he suffered from any disability.   To this date, we have no knowledge of the type or extent of his claimed disability or how any such disability would affect his duties or could be accommodated by any reasonable means other than Mr. Pahuja's bald statement, made and after he was terminated, that he suffered from an unspecified "learning disability".

5.     Moreover, the document that Mr. Pahuja submits as an exhibit to his complaint in order to support his claim that he advised me of his disability and asked for an accommodation is fraudulent.

6.     Annexed as Exhibit "11" to Mr. Pahuja's complaint is a copy of an email purportedly sent to me by Mr. Pahuja on May 5, 2009 in which he allegedly informed me, at the end of the last sentence of the email, disjointedly, that he had "a learning disability that requires an accommodation".

7.     In fact, the email that Mr. Pahuja actually sent to me on May 5, 2009 did not include that advice or those words.  Apparently, Mr. Pahuja fraudulently altered the email and submitted the fraudulently altered copy to support his claim herein, knowing full well that he

never advised me or his employer, GCLR, that he suffered from any kind of disability or required any specific accommodation (if, in fact, he did).

8.     Annexed hereto as Exhibit "A" is a true copy of the actual email from Mr. Pahuja to me at the time, and on the date, set forth in Mr. Pahuja's complaint.  It was, and is, preserved in its original, unaltered form, electronically in a secure data base incapable of corruption or alteration, and time stamped.

9.     As his claim that he advised his employer of his disability and sought an accommodation that was not granted is a fraud, his complaint that he was terminated by his employer because it did not wish to provide the accommodation that he claims to have sought is also false and meritless.

10.     Although gross failures of Mr. Pahuja in the performance of some of his duties during the short period that he was in GCLR's employ might theoretically be explained by some form of "learning disability", it was not such shortcomings in his performance that, led to the termination of Mr. Pahuja's employment so soon after he was hired.  Rather, Mr. Pahuja's employment was terminated principally because of his inappropriate behavior and conduct towards those with whom he was required to interact including, but not limited to, his superiors, those who he was tasked to supervise, both current and prospective students of AUA and their families and outside vendors, due to his utter lack of ability to develop appropriate rapport with his colleagues, AUA faculty and administrative staff, and, most importantly, those who he was charged with recruiting and due to his incompetence on matters for which he should have

required minimal or no training given the nature of his job and the prerequisite experience that he represented that he had in similar jobs before he was hired by GCLR.

11.     In the short period of time that Mr. Pahuja worked for AUA, he harangued all those with whom he came in contact, most inappropriately, with stories, complaints and cries for help about his poor interpersonal relationships with his family; (principally his mother), who he claimed, was overbearing, overly controlling and was prohibiting him from enjoying an active dating and sex life and preventing him from finding a suitable marriage partner.

12.     Sharing his personal problems with supervisors without whom he had no prior personal relationships was disturbing and embarrassing.  Sharing them with subordinates and colleagues was inappropriate and troubling to those who he exposed to his problems.

13.     Even more problematic was his asserted interest in dating students of and business associates of the school and of his employer.

14.     On one occasion, at an information seminar for potential students for AUA's Nursing School, I obtained the assistance of a then current student at the Nursing School to speak to the recruits.  During the course of the seminar, Mr. Pahuja asked both me and the Associate Director of Admissions, International, Par Kumar, who held a senior position to that of Mr. Pahuja, to intercede on his behalf with the student who, he, stated, he found attractive and who, he stated, he wished to date.

4

15.     Dating a student of AUA would have been singularly inappropriate given Mr. Pahuja's position for obvious reasons.  Expressing interest to his superiors in dating a student and asking them to facilitate his dating rather than attending to the important duties for which he was present at the information seminar was also inappropriate on numerous levels.

16.     After the seminar, both Par Kumar and I separately addressed the matter with Mr. Pahuja and advised him that there could be no repeat of similar conduct or attempt to become involved with any students, subordinates at GCLR or anyone else associated with our business or efforts to recruit students.

17.     At the conclusion of the seminar, on the ride home, I warned Mr. Pahuja that his expressed interest in one of AUA's students was inappropriate.  Rather than express remorse for his inappropriate behavior, he devoted the rest of the ride home to explaining to me the troubles he was experiencing with his family, the controlling nature of his mother and his inability to find women to date and/or marry; thus attempting to justify his wrongful conduct.

18.     I found it troubling that Mr. Pahuja felt the need, and thought it appropriate,  to advise me of his personal problems despite that I was his supervisor and we had no relationship other than that of professional subordinate with professional supervisor .  More significantly, I found it troubling that he did not seem to be remorseful about his inappropriate conduct and his attempt to justify his conduct only made matters worse.

19.     I advised Mr. Pahuja that he should not attempt again to date a student or anyone else associated with AUA or GCLR.

20.     Mr. Pahuja did not heed the advice.  On a subsequent occasion, news reporters came to GCLR's offices to interview AUA's president for a television piece favorable to AUA. Among those who came for the interview was a young female reporter.

21.     During the course of the taping, again, Mr. Pahuja asked Par Kumar if she would intercede on his behalf to obtain a date for him with the reporter.

22.     Again, his interest in involvement with the reporter was singularly inappropriate as was his inattention to his duties in favor of his preoccupation with his dating and sex life.

23.     Equally inappropriate was Mr. Pahuja's attempt again to involve Ms. Par, a senior manager at GCLR, to act on his behalf having already been warned by her that such conduct was wrongful.  In addition, and equally troublesome was that, even after he was warned by Ms. Kumar to keep his private business out of the office and away from his colleagues, Mr. Pahuja repeatedly called Ms. Kumar at her home, often in the middle of the night, whining, crying and complaining about his troubles at home and with his mother and other family members, and begging for Ms. Kumar's help in finding him dating partners and in dealing with his mother.

24.     Mr. Pahuja was hired on February 21, 2009 as a "Senior Associated Director of Admissions; Nursing", a position which required both prior extensive experience in the areas of

recruitment and admissions of students for institutions of higher learning and supervision of associate directors of admissions.

25.  Mr. Pahuja learned of the job through GCLR's posting on "higheredjobs.com".

26.  Our posting included a detailed job description, a copy of which is annexed hereto as Exhibit "B".  Although, during his employment interview, Mr. Pahuja represented that he had experience and skill commensurate with the job description, his work proved that he did not.

27.  Within a short time after he was employed, he was assigned the responsibility for supervision of a New Student Coordinator; to wit, Jeanine Gibson, and an Associated Director of Admissions; school of nursing, Megan FitzGerald; however, both your affiant's supervisor and those that he was assigned to supervise rapidly became concerned about his lack of supervisory skills and methods.

28.  He repeatedly engaged his subordinates in a superior and condescending manner which was off putting to all concerned.  This was not in keeping with the methods and means employed by supervisors at GCLR.  We are a small and tight knit group and rely on congeniality and team work for our results.  Mr. Pahuja was clearly not a team player and had no supervisory skills.  His methods were both insulting to his subordinates and counterproductive.

29.  Mr. Pahuja had, on several occasions during his late night calls, confided to Ms. Kumar that he lacked the know how and personality to supervise, a fact which was readily

apparent to all who observed him, despite his advice during his hiring interview that he had significant supervisory experience.

30.    His condescending attitude was not limited to those who he was charged with supervising; all who dealt with him observed him employ that same demeanor, attitude and method with potential recruits and their families.

31.    I both counseled and warned Mr. Pahuja on several occasion about his methods and conduct; to no avail.

32.    Based upon all of the foregoing, it was clear to me, and to my own supervisor, Richard Woodward, Director for Enrollment Management, that Mr. Pahuja was not a good fit for our company, we all were deeply concerned that GCLR and AUA would be exposed to liability if Mr. Pahuja acted out on his stated interest in students, third parties and subordinates at AUA.

33.    By his own admission, he was unskilled as a supervisor and, most importantly, lacked the personality and skills needed of a recruiter.

34.    All of the foregoing is not to say that his inappropriate behavior, poor affect and lack of rapport with those with whom Mr. Pahuja was required to come into contact in the course of performance of this duties were the only problems that GCLR had with Mr. Pahuja or that solely precipitated the termination of his employment.

35.     Also contributing to his termination was that Mr. Pahuja proved himself to be incapable of performing any of his duties in a timely and proper manner.

36.     For example, start time for employees at GCLR, and Mr. Pahuja's start time, in particular, was 9:00 a.m.

37.     However, Mr. Pahuja was repeatedly late in arriving at his job.  He was counseled on lateness on numerous occasions.  Each time he advised of some problem, such as delays on the subway, which accounted for his lateness.   Coincidently, your affiant took the same subway line as Mr. Pahuja and experienced no such difficultly in arriving to work in a timely fashion.

38.     Rather than terminate or otherwise discipline Mr. Pahuja, we determined to offer him the choice of starting work at 9:30 and working until 5:30.  He so opted; however, he proceeded, routinely to miss the new, 9:30, start time.

39.     We then allowed him to start work at 10:00 a.m.; however, he quickly proved unable to arrive for work at that time.

40.     In addition to lateness, Mr. Pahuja also demonstrated a lack of ability to carry out any of his duties most of which he was required to have the ability to perform without instruction or with minimal instruction before he was ever hired.

41.     Among Mr. Pahuja's duties was the responsibility to create productive and ongoing relationships with pre-professional academic advisors at colleges and universities within specified geographical areas.  In the time that he was employed at GCLR, Mr. Pahuja failed to set up a single meeting or to make a single presentation in furtherance of that responsibility.

42.     Mr. Pahuja's duties required that he have superior public speaking and interviewing skills.  Mr. Pahuja informed us that he has significant experience and skills in this regard at the time that the was interviewed for the position; however, your affiant (and others who were tasked to work with Mr. Pahuja) observed that he lacked the skills to do so.  In general, we observed that Mr. Pahuja had a difficult time interacting with and speaking to people in general whether in a public or in private settings.

43.     Mr. Pahuja's job required him to approach and interact with doctors and nursing faculty members; however, during the course of his employment, he made no effort to introduce himself to any such personnel.  Among his duties, Mr. Pahuja was required to compile and submit various reports such as nursing statistics for September,  2009, nursing statistics for January, 2010, an Outreach calendar and a Potential Fairs Report.  Mr. Pahuja failed to submit any of the reports.

44.     Mr. Pahuja was also tasked to combine two forms that the admissions counselors at GCLR had been using to assess the students who applied for advance standing in AUA's Nursing School.  One needed no special training or previous skills to complete the task.  What was required was a command of the English language and common sense.  Nevertheless,  Mr.

Pahuja failed to complete the assignment. Eventually, I was forced to combine the two forms myself.

45.    Mr. Pahuja was also responsible for generating new leads by arranging and delivering presentations to key pre-medical, pre-nursing students interest groups at their regularly scheduled meetings. However, Mr. Pahuja failed to generate, or even attempt to generate, any leads or to arrange or deliver any such presentations.

46.    As a person hired as a senior supervising admissions associate, these were tasks that Mr. Pahuja should have needed only minimal instruction to perform.

47.    Mr. Pahuja had represented the he had extensive experience in recruitment and admissions at institutions of higher learning. The job for which he was hired was hardly an entry level position. It required no skills that any supervisor in the filed would not have routinely performed or known how to do so.

48.    Mr. Pahuja's lack of requisite prior knowledge experience and skill was exacerbated by a poor work ethic and attitude

49.    On Thursday, June 4, 2009, I asked Mr. Pahuja to accompany me to a presentation that I had arranged and to watch me to learn how the presentation was to be done. I assigned to Mr. Pahuja the task of bringing, and setting up, the laptop computer that I was to use for the presentation. He was to bring his own computer  About two thirds of the way into the

presentation, the laptop ran out of charge.  Mr. Pahuja had failed to insure that his laptop battery was charged and had not brought the laptop's power cord to the presentation.  I asked Mr. Pahuja to return to his work area and get the power cord; however, he just laughed and remained in his seat.  I had to ask him three times in front of the students who were attending the presentation before he finally went to retrieve the cord.  It took Mr. Pahuja approximately fifteen minutes to return with the cord.  I found Mr. Pahuja's excuse for his delay (he claimed ignorance that the laptop computer had a power cord even though the computer at issue was his own) lacking in credibility.

50.     The shortcomings exhibited by Mr. Pahuja in the performance of his duties could not have been corrected by any accommodations even had we any knowledge of Mr. Pahuja claimed learning disability.  Mr. Pahuja's problem was not that he could not learn, it was that he could not, or would not, perform the simplest of tasks at the same time that he lacked the requisite skills, experience, rapport with people, personality work ethic,  personal behavior and morality required for his job.

51.     In addition to the altered email above discussed, Mr. Pahuja annexes as exhibits to his complaint, various emails which, at first blush, seem to indicate praise for Mr. Pahuja's performance while he was employed at GCLR.  The emails when read in context show otherwise.

52.     For the most part, the emails memorialize either expressions of satisfaction that events and circumstances for which Mr. Pahuja could take no credit went well or confirmation

that Mr. Pahuja understood what he was assigned to do (Mr. Pahuja would confirm that he understood an assignment or advised that he intended to perform an assignment and I would respond positively or by saying something like "excellent").  Unfortunately, Mr. Pahuja's subsequent performance in carrying out what he clearly acknowledged  he understood was his job, was well less than "excellent" on almost every occasion.

53.      On the basis of the foregoing, it should be clear that Mr. Pahuja's termination was for other than discriminatory reasons and did not deprive Mr. Pahuja of rights under the Human Rights or ADA laws.

54.      I annex hereto as Exhibit "C" a copy of Mr. Pahuja's employment file maintained by GCLR, LLC from which the administrative information regarding the particulars of his employment (start and end dates – salary etc.) can be gleamed.

WHEREFORE, your affiant, on behalf of GCLR, LLC and, to the extent necessary, American University of Antigua, respectfully requests that Mr. Pahuja's complaint be dismissed as meritless.

Marie McGillycuddy

Sworn to before me this 6th
day of August, 2009

LEONARD A. SCLAFANI
Notary Public, State of New York
No. 02SC6120579
Qualified in Westchester County
Commission Expires December 20, 2009

LEONARD A. SCLAFANI
Notary Public, State of New York
No. 02SC6120579
Qualified in Westchester County
Commission Expires December 20, 2009

EXHIBIT A

**vm reporting**

| | |
|---|---|
| **From:** | Marie McGillycuddy |
| **Sent:** | Tuesday, May 05, 2009 11:12 AM |
| **To:** | Rajeev Pahuja |
| **Subject:** | Re: Westchester-Putnam College Conference for Juniors. |

Excellent! Thanks Rajeev.
Kind Regards,
Marie B. McGillycuddy
Regional Director of Admissions
917-940-4006
------------------------
Sent using BlackBerry

DISCLAIMER: This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. GCLR LLC, and any of its subsidiaries each reserve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.

**From:** Rajeev Pahuja
**To:** Marie McGillycuddy
**Sent:** Tue May 05 10:27:12 2009
**Subject:** Westchester-Putnam College Conference for Juniors.
Hi Marie,

Everything worked out well at the fair last night and the nursing display was a great idea.

Thanks for all support and great ideas Marie.

Kind regards,

*Rajeev Pahuja,*
*Senior Associate Director of Admissions, School of Nursing*



**American University of Antigua (AUA)**
College of Medicine | School of Nursing
**American International College of Arts and Sciences - Antigua**
**Kasturba Medical College International Center (KMCIC)**
c/o Greater Caribbean Learning Resources, Inc.
Two Wall Street, 10th Floor
New York, NY 10005
212.661.8899 x122
www.auamed.org

EXHIBIT B

# AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE

## Senior Associate Director of Admissions; Nursing

### *Job Description:*

Under the direction of one of the Regional Directors of Admissions, the Associate Director of Admissions is broadly responsible for the following activities and outcomes in his or her assigned geographic territory:

**OUTREACH:**

Creating productive and ongoing relationships with pre-professional academic advisors at colleges and universities within a specified geographic area.

Generating new leads by arranging and delivering presentations to key pre-medical, pre-nursing student interest groups at their regularly-scheduled meetings.

Conducting and participating in regional information sessions.

**INTERVIEWS:**

Interviewing formal applicants for the Nursing school once they have submitted all of the required credentials.

Writing and submitting a formal recommendation of the candidate to the Admissions Committee.

**FOLLOW-UP:**

By telephone, assisting accepted students in completing all of the necessary preparations to attend AUASON.

**ADMINISTRATION:**

Data base management of students from leads to prospects to applicants to accepted students to new student starts.

Reports on activity and outcomes, including expense reports.

### _Critical Job Dimensions:_

- Bachelor's Degree from a regionally-accredited college or university.

- Sales, marketing and/or public relations experience.

- Specific experience in the recruitment of nursing students for AS AND RN program.

- Complete understanding of nursing education programs and licensing.

- Ability and willingness to travel as necessary during the traditional outreach season (late August-mid April)

- Ability and willingness to work some evening hours and very occasional weekends

- Public speaking skills

- Computer literate and internet-savvy

- Maturity and comfort level to approach and interact with Ph.D. and senior nursing faculty members.

- Interviewing skills.

- Direct management of one or two Associate Directors of Admission (educational representatives), and one New Student Coordinator.

### _Compensation and Benefits:_

Base salary $60-65,000+ depending on experience

Medical insurance, free to employee

All travel expenses paid, including cell phone and internet service provider reimbursement

Training and ongoing support

EXHIBIT C

# GCLR, LLC
## New Hire Form
*All information except signatures must be electronically entered*

### Individual's Personnel Information

| | |
|---|---|
| Hire Date: | 4/6/2009 enter start date: **TUESDAY, APRIL 21, 2009** |
| First Name: | **RAJEEV** |
| Last Name: | **PAHUJA** |
| Social Security Number: | ~~[redacted]~~ |
| Location: | **ADMISSIONS DEPARTMENT** |
| Title: | SENIOR ASSOCIATE DIRECTOR OF ADMISSIONS, SCHOOL OF NURSING |
| Home Phone Number: | **203-589-3537** |
| Mobile Phone Number: | **203-589-3537** |
| Email Address: | PAHUJARA@YAHOO.COM |
| Address: | **55 DUEL DRIVE** |
| | HAMDEN, CT 06518 |
| | |
| | |
| | |
| Emergency Contact Name: | **SHANTI PAHUJA** |
| Emergency Contact Number: | **203-248-4426** |

### Salary Information

| | | | |
|---|---|---|---|
| New Position: | **X** | | mark an "X" if this is a newly created position |
| Position Filled Previously by: | | | name of the previous employee who held this position |
| | *US $'s | | |
| Hourly: | | | enter the hourly $ rate for an hourly paid employee |
| Salary: | 56,000 | | enter the annual $ rate for a salaried employee |

*\* rates for employees paid from the US should be listed under the "US $'s" column in US currency*

*\*\* rates for employees paid from Antigua should be listed under the "EC $'s" column in EC currency*

| | | |
|---|---|---|
| Full time: | **X** | mark an "X" next to the appropriate status |
| Part time: | | |
| Exempt: | | mark an "X" next to the appropriate overtime status |
| Not Exempt: | | |
| Monthly: | | mark an "X" next to the appropriate pay period cycle |
| Bi-Monthly: | | |
| Weekly: | | |
| Referred by: | HIGHEREDJOBS.COM | if an employee referred this new hire enter the employee's name |
| | To: From: | if a contract is provided enter the term |
| Contract Terms: | | |

### Additional Comments

| |
|---|
| |
| |
| |
| |

### Approval

| | | |
|---|---|---|
| Print Name: | MARIE B MCGILLYCUDDY | Dean's Approval: |
| Signature: | *Marie B. McGillycuddy* | |
| Date: | 6.21.4.9 | |
| Print Name: | | Finance Approval: |
| Signature: | | |





Contact your Social Security office immediately if you

▸ lose your card—to get a duplicate card

▸ change your name—to get a card in your new
   name,

▸ are unable to work because of a severe disability
   expected to last a year or more,

▸ are 62 or older—to ask about retirement checks

▸ are within 2 or 3 months of age 65, even if you
   don't plan to retire—to sign up for Medicare.

U.S. Department of Health, Education, and Welfare
Social Security Administration
Form OA-702 (4-76)



You must notify the DMV of address changes within 48 hours. Obtain a sticker at the DMV or a police department.
Print your new address on the sticker and place the sticker in this area.

Class: D - Any motor vehicle that does not require a CDL

Restr: B - Corrective Lenses

Endors: NONE

♥ on front =
Organ Donor
www.ct.gov/dmv

**PAYCHEX**

**Direct Deposit/Access Card
Employee Change Form**

**Paychex Use Only**

| | |
|---|---|
| Client Number | |
| Employee Number | |
| PRS | |
| Date | |
| Verified By | |

**Employee Instructions:**
1. Complete the "Employee Required Information" section.
2. Complete the Direct Deposit, Access Card, or both sections to change your existing payroll information.
3. Sign the bottom of the form.
4. Retain a copy of this form for your records. Return the original to your employer.

**Employer Instructions:**
1. Complete the "Employer Required Information" section.
2. Return this form to your local Paychex office.

## EMPLOYEE – Required Information

*PLEASE PRINT*

Employee Name _Rajeev Pahuje_

Social Security Number _0 4 1 7 0 1 0 3 8 7_

Street Address _55 Duel Drive_ Apt. # ____

City _Hamden_ State _CT_ Zip _06518_

## EMPLOYER – Required Information

*PLEASE PRINT*

Company Name _____

Office/Client Number ____ / ____

Federal ID Number _____

## Complete for DIRECT DEPOSIT

**Bank Account #1**

☑ Checking ☐ Savings _70130_
Account Number* _2111 271 700106514_
Bank Name _New Alliance Bank_
_2111 70130 700106965967_
☐ Remove From Direct Deposit
OR
Change My Deposit Amount To:
☑ Entire Net Pay
☐ _____ % of Net
☐ Specific Amount $ _____.00

**Bank Account #2**

☐ Checking ☐ Savings
Account Number*_____
Bank Name _____
☐ Remove From Direct Deposit
OR
Change My Deposit Amount To:
☐ Entire Net Pay
☐ _____ % of Net
☐ Specific Amount $ _____.00

**Bank Account #3**

☐ Checking ☐ Savings
Account Number*_____
Bank Name _____
☐ Remove From Direct Deposit
OR
Change My Deposit Amount To:
☐ Entire Net Pay
☐ _____ % of Net
☐ Specific Amount $ _____.00

* If your bank account number has changed, you must provide a voided check or bank specification sheet.

## Complete for ACCESS CARD

**Last 8 digits appearing on card (required)** _____

1. ☐ **Change My Name** (a new card will be created)
*PLEASE PRINT*
Old Name _____

New Name _____

2. ☐ **Change My Address and/or Phone Number**
*PLEASE PRINT*
Street Address _____ Apt. # ____
City _____ State ____ Zip ____
Phone ( ____ ) ____ - ____

3. ☐ **Add Another Person to My Account**
*PLEASE PRINT*
Additional Cardholder Name _____

Additional Cardholder SS# ____ / ____ / ____

4. ☐ **Change My Deposit Amount To:**
☐ Entire Net Pay
☐ _____ % of Net
☐ Specific Amount $ _____.00

5. ☐ **Close My Account**

**Note:** All cards with the same name and social security number will be affected by this change.

Employee Signature _____ Date __ / __ / __ Return this original form to your employer.

DP0013 3/05 BC

# Form W-4 (2007)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption from withholding.** If you are exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2007 expires February 16, 2008. See Pub. 505, Tax Withholding and Estimated Tax.

**Note.** You cannot claim exemption from withholding if (a) your income exceeds $850 and includes more than $300 of unearned income (for example, interest and dividends) and (b) another person can claim you as a dependent on their tax return.

**Basic instructions.** If you are not exempt, complete the **Personal Allowances Worksheet** below. The worksheets on page 2 adjust your withholding allowances based on

itemized deductions, certain credits, adjustments to income, or two-earner/multiple job situations. Complete all worksheets that apply. However, you may claim fewer (or zero) allowances.

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the **Personal Allowances Worksheet** below. See Pub. 919, How Do I Adjust My Tax Withholding, for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax

for Individuals. Otherwise, you may owe additional tax. If you have pension or annuity income, see Pub. 919 to find out if you should adjust your withholding on Form W-4 or W-4P.

**Two earners/Multiple jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others.

**Nonresident alien.** If you are a nonresident alien, see the Instructions for Form 8233 before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2007. See Pub. 919, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

---

## Personal Allowances Worksheet (Keep for your records.)

| | | |
|---|---|---|
| A | Enter "1" for **yourself** if no one else can claim you as a dependent | A |
| B | Enter "1" if: { • You are single and have only one job; or<br>• You are married, have only one job, and your spouse does not work; or<br>• Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less. } | B _1_ |
| C | Enter "1" for your **spouse**. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) | C |
| D | Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return | D |
| E | Enter "1" if you will file as **head of household** on your tax return (see conditions under Head of household above) | E |
| F | Enter "1" if you have at least $1,500 of **child or dependent care expenses** for which you plan to claim a credit | F |
| | (**Note.** Do not include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.) | |
| G | **Child Tax Credit** (including additional child tax credit). See Pub 972, Child Tax Credit, for more information.<br>• If your total income will be less than $57,000 ($85,000 if married), enter "2" for each eligible child.<br>• If your total income will be between $57,000 and $84,000 ($85,000 and $119,000 if married), enter "1" for each eligible child plus "1" **additional** if you have 4 or more eligible children. | G |
| H | **Add lines A through G** and enter total here. (**Note.** This may be different from the number of exemptions you claim on your tax return.) ▶ | H _0_ |
| | For accuracy, complete all worksheets that apply. { • If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2.<br>• If you have more than one job or are married and you and your spouse both work and the combined earnings from all jobs exceed $40,000 ($25,000 if married) see the **Two-Earners/Multiple Jobs Worksheet** on page 2 to avoid having too little tax withheld.<br>• If neither of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 below. | |

---

- - - - - - - - - - - Cut here and give Form W-4 to your employer. Keep the top part for your records. - - - - - - - - - - -

| Form **W-4** | **Employee's Withholding Allowance Certificate** | OMB No. 1545-0074 **2007** |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | |

| 1 Type or print your first name and middle initial.   _Rajeev_    Last name _Pahuja_ | | 2 Your social security number ~~————~~ |
|---|---|---|
| Home address (number and street or rural route) _55 Duel Drive_ | 3 ☒ Single ☐ Married ☐ Married, but withhold at higher Single rate.<br>**Note.** If married, but legally separated, or spouse is a nonresident alien, check the "Single" box. | |
| City or town, state, and ZIP code _Hamden, CT 06518_ | 4 If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a replacement card. ▶ ☐ | |

| 5 | Total number of allowances you are claiming (from line H above or from the applicable worksheet on page 2) | 5 | |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck | 6 | $ |
| 7 | I claim exemption from withholding for 2007, and I certify that I meet **both** of the following conditions for exemption.<br>• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability **and**<br>• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.<br>If you meet both conditions, write "Exempt" here ▶ | 7 | |

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(Form is not valid
unless you sign it.) ▶ _____   Date ▶ _____

| 8 Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) | 9 Office code (optional) | 10 Employer identification number (EIN) |
|---|---|---|

For Privacy Act and Paperwork Reduction Act Notice, see page 2.     Cat. No. 10220Q     Form **W-4** (2007)

Form W-4 (2007)

## Deductions and Adjustments Worksheet

**Note.** Use this worksheet *only* if you plan to itemize deductions, claim certain credits, or claim adjustments to income on your 2007 tax return.

1  Enter an estimate of your 2007 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes, medical expenses in excess of 7.5% of your income, and miscellaneous deductions. (For 2007, you may have to reduce your itemized deductions if your income is over $156,400 ($78,200 if married filing separately). See *Worksheet 2* in Pub. 919 for details.) . . .   1  $ _____

2  Enter: { $10,700 if married filing jointly or qualifying widow(er)  
           $ 7,850 if head of household  
           $ 5,350 if single or married filing separately } . . . . . .   2  $ _____

3  Subtract line 2 from line 1. If zero or less, enter "-0-" . . . . . . . . . .   3  $ _____

4  Enter an estimate of your 2007 adjustments to income, including alimony, deductible IRA contributions, and student loan interest   4  $ _____

5  Add lines 3 and 4 and enter the total. (Include any amount for credits from *Worksheet 8* in Pub. 919) .   5  $ _____

6  Enter an estimate of your 2007 nonwage income (such as dividends or interest) . . . . .   6  $ _____

7  Subtract line 6 from line 5. If zero or less, enter "-0-" . . . . . . . . . . .   7  $ _____

8  Divide the amount on line 7 by $3,400 and enter the result here. Drop any fraction . . . . .   8  _____

9  Enter the number from the **Personal Allowances Worksheet**, line H, page 1 . . . . . .   9  _____

10  Add lines 8 and 9 and enter the total here. If you plan to use the **Two-Earners/Multiple Jobs Worksheet**, also enter this total on line 1 below. Otherwise, **stop here** and enter this total on Form W-4, line 5, page 1   10  _____

## Two-Earners/Multiple Jobs Worksheet (See *Two earners/multiple jobs* on page 1.)

**Note.** Use this worksheet *only* if the instructions under line H on page 1 direct you here.

1  Enter the number from line H, page 1 (or from line 10 above if you used the Deductions and Adjustments Worksheet)   1  _____

2  Find the number in Table 1 below that applies to the LOWEST paying job and enter it here. However, if you are married filing jointly and wages from the highest paying job are $50,000 or less, do not enter more than "3." . . . . . . . . . . . . . . . . . . . .   2  _____

3  If line 1 is **more than or equal to** line 2, subtract line 2 from line 1. Enter the result here (if zero, enter "-0-") and on Form W-4, line 5, page 1. **Do not use the rest of this worksheet** . . . . . . .   3  _____

**Note.** If line 1 is *less than* line 2, enter "-0-" on Form W-4, line 5, page 1. Complete lines 4-9 below to calculate the additional withholding amount necessary to avoid a year-end tax bill.

4  Enter the number from line 2 of this worksheet . . . . .   4  _____

5  Enter the number from line 1 of this worksheet . . . . .   5  _____

6  Subtract line 5 from line 4 . . . . . . . . . . . . . . . . .   6  _____

7  Find the amount in Table 2 below that applies to the HIGHEST paying job and enter it here . . .   7  $ _____

8  Multiply line 7 by line 6 and enter the result here. This is the additional annual withholding needed . .   8  $ _____

9  Divide line 8 by the number of pay periods remaining in 2007. For example, divide by 26 if you are paid every two weeks and you complete this form in December 2006. Enter the result here and on Form W-4, line 6, page 1. This is the additional amount to be withheld from each paycheck . . . . .   9  $ _____

### Table 1

| Married Filing Jointly | | All Others | |
|---|---|---|---|
| If wages from LOWEST paying job are— | Enter on line 2 above | If wages from LOWEST paying job are— | Enter on line 2 above |
| $0 - $4,500 | 0 | $0 - $6,000 | 0 |
| 4,501 - 9,000 | 1 | 6,001 - 12,000 | 1 |
| 9,001 - 18,000 | 2 | 12,001 - 19,000 | 2 |
| 18,001 - 22,000 | 3 | 19,001 - 26,000 | 3 |
| 22,001 - 26,000 | 4 | 26,001 - 35,000 | 4 |
| 26,001 - 32,000 | 5 | 35,001 - 50,000 | 5 |
| 32,001 - 38,000 | 6 | 50,001 - 65,000 | 6 |
| 38,001 - 46,000 | 7 | 65,001 - 80,000 | 7 |
| 46,001 - 55,000 | 8 | 80,001 - 90,000 | 8 |
| 55,001 - 60,000 | 9 | 90,001 - 120,000 | 9 |
| 60,001 - 65,000 | 10 | 120,001 and over | 10 |
| 65,001 - 75,000 | 11 | | |
| 75,001 - 95,000 | 12 | | |
| 95,001 - 105,000 | 13 | | |
| 105,001 - 120,000 | 14 | | |
| 120,001 and over | 15 | | |

### Table 2

| Married Filing Jointly | | All Others | |
|---|---|---|---|
| If wages from HIGHEST paying job are— | Enter on line 7 above | If wages from HIGHEST paying job are— | Enter on line 7 above |
| $0 - $65,000 | $510 | $0 - $35,000 | $510 |
| 65,001 - 120,000 | 850 | 35,001 - 80,000 | 850 |
| 120,001 - 170,000 | 950 | 80,001 - 150,000 | 950 |
| 170,001 - 300,000 | 1,120 | 150,001 - 340,000 | 1,120 |
| 300,001 and over | 1,190 | 340,001 and over | 1,190 |

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. The Internal Revenue Code requires this information under sections 3402(f)(2)(A) and 6109 and their regulations. Failure to provide a properly completed form will result in your being treated as a single person who claims no withholding allowances; providing fraudulent information may also subject you to penalties. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, to cities, states, and the District of Columbia for use in administering their tax laws, and using it in the National Directory of New Hires. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.

**✕Aetna**

### New York Small Group Business (2 - 50 Eligible Employees)
### Employee Enrollment/Change Form

Member Aetna ID Number (if available) _____

| Employer Name | INSTRUCTIONS: You, the employee, must complete this enrollment form in full or it will be returned to you resulting in a delay in processing. You are solely responsible for its accuracy and completeness. If waiving coverage, please complete Sections B and D. |
|---|---|
| American University of Peru | |

| Effective Date | ☒ New Hire ☐ Late Enrollment | ☐ Change of Coverage ☐ Employee Termination | COBRA/State Continuation for: |
|---|---|---|---|
| | ☐ Rehire/Reinstatement ☐ Other _____ | ☐ Add Spouse/Dependent Child ☐ Remove Spouse/Dependent Child | ☐ Employee ☐ Dependent |
| Date of Hire | ☐ New Group Enrollment | ☐ Name Change ☐ Other _____ ☐ Cancel Coverage | Length of Continuation: ☐ 18 ☐ 36 ☐ Other _____ Original Qualifying Event Date _____ Reason _____ |

## A. Coverage Selection - *Please print clearly, using black ink.*    *(Shaded sections for Employer/Aetna Use Only)*

| Control/Group No. | Suffix | Account | Plan No. | Class Code | | Control/Group No. | Suffix | Account | Plan No. | | Control/Group No. | Suffix | Account | Plan No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**1. Medical -** Check one.
**Managed Choice Open Access:**
☐ 21a-07 ☐ 21b-07 ☐ 21c-07 ☐ 22a-07 ☐ 22b-07
☐ 22c-07 ☐ 24a-07 ☐ 24b-07 ☐ 24c-07 ☐ 26a-07
☐ 26b-07 ☐ 26c-07 ☐ 27-07 ☐ 29a-07 ☐ 29b-07
☐ 29c-07 ☐ 33a-07 ☐ 33b-07 ☐ 33c-07

**Managed Choice Open Access (HSA Compatible):**
☐ 30-07 ☐ 31-07 ☐ 34-07

**EPO Open Access:**
☐ 1a-07 ☐ 1b-07 ☐ 1c-07 ☐ 2a-07 ☐ 2b-07
☐ 2c-07 ☐ 3a-07 ☐ 3b-07 ☐ 3c-07 ☐ 4a-07
☐ 4b-07 ☐ 4c-07

**Indemnity:**
☐ 20-07

**2. Dental -** Check one.
**Standard Plans**
☐ Option 2: DMO            ☐ Option 4: PPO Max
☐ Option 3:                    ☐ Option 5: Active PPO
Freedom-of-Choice:        ☐ Option 6: Passive PPO
DMO ___ or PPO ___     ☐ Option 7: Consumer Directed
☐ Out-of-State PPO Plan

**Voluntary Plans**
☐ Option 2: DMO
☐ Option 3: Freedom-of-Choice: DMO ___ or PPO ___
☐ Option 4: PPO Max
☐ Out-of-State PPO Plan
Before today, were you covered under this employer's dental plan?
☐ Yes ☐ No

**3. Life**
☐ Basic Life / AD&D Ultra™
☐ Optional Dependent Life
☐ Life & Disability Packaged Plan

Beneficiary Designation - Full Name (First, Middle, Last) _____

Beneficiary Social Security No. _____

Relationship to Employee _____

## B. Employee Information - *Must be completed by the employee.*

| Social Security Number | Last Name, First Name, M.I. | | Job Title | Home Telephone | Primary Language Spoken (Optional) |
|---|---|---|---|---|---|
| ~~_____~~ | Paluja, Rajeer | | | | |
| Home Address | | Apt. No. | City, State | | ZIP Code |
| 55 Duel Drive | | | Hamden, CT | | 06518 |
| Work Address | | | City, State | ZIP Code | Work Telephone |
| Salary (required) $ 1,076 | ☐ Hourly ☒ Weekly ☐ Monthly | No. of Hours Worked Per Week | Check One ☐ Part-time ☒ Full-time | Marital Status ☐ Married ☐ Single | No. of Dependents Including Spouse |

## C. Individuals Covered - *List individuals for whom you are enrolling or adding/changing/removing coverage. Insert additional sheets if necessary. Height and weight information needed for Life insurance applicants only.*

| Name (Last, First, M.I.) | Sex M/F | Social Security No. | Birthdate MM / DD / YYYY | Height (ft, in.) | Weight (lbs.) | Incapacitated | Coverage Election | Other Health Coverage | Other Dental Coverage | Prior Dental Coverage | Student Age 19 or Older | Out of Area | Primary Office ID Number (if applicable) | Current Patient | Dental Office ID Number (if applicable) | Current Patient |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Employee** 1. | | | / / | | | Yes N/A | ☐ Medical ☐ Dental ☐ Life | Yes ☐ | Yes ☐ | Yes ☐ | Yes N/A | Yes ☐ | | Yes ☐ | | Yes ☐ |
| **Spouse** 2. | | | / / | | | N/A | ☐ Medical ☐ Dental ☐ Life | ☐ | ☐ | ☐ | N/A | ☐ | | ☐ | | ☐ |
| **Child** 3. | | | / / | | | ☐ | ☐ Medical ☐ Dental ☐ Life | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ | | ☐ |
| **Child** 4. | | | / / | | | ☐ | ☐ Medical ☐ Dental ☐ Life | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ | | ☐ |

## D. Declination/Waiver of Coverage - *To be completed if medical and/or dental coverage is declined or refused by an eligible employee and/or his/her eligible family members.*

**1. Medical Coverage Declined for:**
☐ Myself ☐ Spouse ☐ Dependents

**2. Dental Coverage Declined for:**
☐ Myself ☐ Spouse ☐ Dependents

**Reason for Declining Coverage** (If applicable, please attach front/back of your health coverage ID card.):
☐ Covered by spouse's group coverage - Carrier Name and ID _____
☐ Enrolled in other Insurance Plans - Insurance Company Name and ID _____
☐ Medicare   ☐ Covered by TRICARE or CHAMPVA        ☐ Other (Explain): _____
☐ Spouse covered by employer's group medical coverage   ☐ Spouse covered by employer's group dental coverage

I acknowledge I have been given the right to apply for this coverage, however, I am electing not to enroll. By declining this group coverage I acknowledge that myself and/or my dependents may have to wait until the plan's next anniversary date to be enrolled for group coverage. Pre-existing conditions, when enrolled in this plan, may not be covered for twelve months.

| *Please sign here ONLY IF YOU ARE DECLINING coverage for yourself or dependent(s).* | Date (Month / Day / Year) |
|---|---|
| X Employee Signature | |

GR-67834-16  (10-05)                                                                                  NY - SGB   (V2)   R-POD

**E. Race/Ethnicity - Optional**   (This information is designed for the purpose of data collection and will not be used for determining eligibility, rating or claim payment.)

| Employee | ☐ White - 01   ☐ African American or Black - 02 | Child | ☐ White - 01   ☐ African American or Black - 02 |
|---|---|---|---|
| 1. | ☒ Asian - 04   ☐ Other - 05 _____ ☐ Hispanic or Latino - 03 | 3. | ☐ Hispanic or Latino - 03   ☐ Asian - 04   ☐ Other - 05 _____ |
| Spouse | ☐ White - 01   ☐ African American or Black - 02 | Child | ☐ White - 01   ☐ African American or Black - 02 |
| 2. | ☐ Hispanic or Latino - 03   ☐ Asian - 04   ☐ Other - 05 _____ | 4. | ☐ Hispanic or Latino - 03   ☐ Asian - 04   ☐ Other - 05 _____ |

**F.  Dependent Information**

| Does any dependent listed in Section C live at another address?  If Yes, who and what address? | If any dependent's last name differs from yours, explain the circumstances. |
|---|---|
| ☐ Yes ☐ No | |

**G.  Other Insurance**

If you have checked "Yes" to Other Health Coverage (Section C), provide name and policy number of insurance carrier, HMO, or other source; a copy of the insurance card, and the start date of coverage.

If you have checked "Yes" to Other Dental Coverage (Section C), provide name and policy number of insurance carrier, HMO, or other source; a copy of the insurance card, and the start date of coverage.

Is your Spouse Employed?  If "Yes," provide name and address of spouse's employer.      ☐ Yes ☐ No

| PROOF OF PRIOR COVERAGE - IMPORTANT   *(Required)*<br>Does anyone enrolling on this enrollment form have prior coverage?<br>☐ Yes ☐ No   If you answered "yes", provide applicant names, start and end dates of prior coverage. | Acceptable forms of proof are:<br>1. Certificate of Creditable Coverage from prior carrier, or<br>2. Copy of ID card or most recent payroll stub showing medical coverage deduction, or<br>3. Copy of most recent medical premium bill from prior carrier.<br><br>Failure to provide Proof of Prior Coverage may subject you or a family member to the full pre-existing conditions limitation with no credit for prior coverage.  You may request a Certificate of Creditable Coverage from your prior carrier. |
|---|---|
| *Proof of coverage must accompany this enrollment form for pre-existing condition credit or waiver of dental waiting period.* | |

**Conditions of Enrollment**

On behalf of myself and the dependents listed on the reverse side, I agree to or with the following:

1. I acknowledge that by enrolling in the following plans, coverage is provided by the following entities (collectively referred to as "Aetna"):
   - Aetna Primary Care Plan HMO and Aetna Choice Plan POS and Dental HMO Rider:  Aetna Health Inc. and/or Aetna Health Insurance Company of New York
   - Aetna Managed Choice Plan PPO:  Aetna Life Insurance Company
   - Life, Accidental Death & Dismemberment, DMO, Dental PPO and all other health coverages:  Aetna Life Insurance Company
2. I understand and agree that my employer's application will determine coverage and that there is no coverage unless and until both the eligible employee enrollment form and employer application have been accepted and approved by Aetna.  Even if this enrollment form is approved, any misstatements or omissions may result in future claims being denied and the policy or my coverage under the policy being rescinded or reevaluated, as of the effective date, for eligibility and rating purposes. *For life coverages:*  I understand that the effective date of insurance for myself or for any of my dependents is subject to my being actively at work on that date and that the effective date of insurance for any of my dependents is also subject to the dependent health condition requirements of the benefit plan.  Further, I understand that any insurance subject to evidence of good health or medical information will not become effective until Aetna gives its written consent.
3. I understand and agree that this enrollment form may be transmitted to Aetna or its agent by my employer or its agent. I authorize any physician, other healthcare professional, hospital or any other healthcare organization ("Providers") to give to Aetna or its agent information concerning the medical history, services or treatment provided to anyone listed on this enrollment form, including those involving mental health, substance abuse and HIV/AIDS.  I further authorize Aetna to use such information and to disclose such information to affiliates, providers, payors, other insurers, third party administrators, vendors, consultants and governmental authorities with jurisdiction when necessary for my care or treatment, payment for services, the operation of my health plan, or to conduct related activities.  I have discussed the terms of this authorization with my spouse and competent adult dependents, and I have obtained their consent to those terms.  This authorization will remain valid for the term of the coverage and for so long thereafter as allowed by law.  I understand that I am entitled to receive a copy of this authorization upon request and that a photocopy is as valid as the original.
4. The plan documents will determine the rights and responsibilities of member(s) and will govern in the event they conflict with any benefits comparison, summary or other description of the plan.
5. I understand and agree that, with the exception of Aetna Rx Home Delivery, all participating providers and vendors are

2

## Conditions of Enrollment (continued)

Independent contractors and are neither agents nor employees of Aetna. Aetna Rx Home Delivery, LLC, is a subsidiary of Aetna Inc. The availability of any particular provider cannot be guaranteed and provider network composition is subject to change. Notice of the change shall be provided in accordance with applicable state law.

6. I understand and agree that, with certain exceptions described in the plan documents, HMO and DMO plans only provide coverage for referred benefits, and that, in order to be covered, services must be performed either by a participating primary care physician, primary care dentist, or by the participating specialist, hospital, pharmacy, dentist, or other provider as authorized by a referral from a participating primary care physician.

7. I understand and agree that, as described in the plan documents and when enrolled for medical coverage, any pre-existing conditions for my spouse, dependents or myself may not be covered for 12 months.

## Misrepresentation

8. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

I represent that all information supplied in this form is true and complete. I have read and agree to the Conditions of Enrollment and Misrepresentation on this New York Small Group Business (2 - 50 Eligible Employees) Employee Enrollment/Change Form. I understand that, in the event I fail to sign this form within 31 days after the above transaction request or for any reason Aetna does not receive notice of the above transaction request within a reasonable time following the event, my and my dependents' eligibility may be affected. I am employed by the employer shown on Page 1, and I am working full time at least 20 hours per week for this employer at the regular place of business.

| Employee Signature | Employee E-mail Address (optional) | Date (Mo./Day/ Yr.) |
|---|---|---|
| X | R. 1pahuja@avamed.org | 04/21/09 |
| Employer Signature | | Date (Mo./Day/ Yr.) |
| X | | |

3

**AIG** **AMERICAN GENERAL**

**Group Employee Enrollment Form**

# American International Life Assurance Company of New York

New York, New York

A member company of American International Group, Inc.

Administrative Office: Client Services 3-A, 3600 Route 66, P.O. Box 1583, Neptune, NJ 07754-1583

Phone: 1-800-346-7692, Fax: 1-732-922-7604

| Completing Your **GROUP ENROLLMENT FORM**<br>1. **Fully complete** each section<br>2. **Sign and date** Refusal/Authorization Section, as needed. | Group Policy No.(s) | ☐ **NEW ENROLLMENT**<br>☐ **CHANGE IN ENROLLMENT** |
| --- | --- | --- |

## 1. PERSONAL DATA (Must always be completed)

| Division No. | Class | Social Security No. | Last Name Pahuja | First Name Rajeev | Initial |
| --- | --- | --- | --- | --- | --- |

| Sex ☒ Male ☐ Female | Date of Birth MM DD YY | Street Address 55 Duel Drive | City Hamden | State CT | Zip Code 06518 |
| --- | --- | --- | --- | --- | --- |

| Name of Employer American University of Nursing | Location New York, NY | Salary $ 56,000 Per year |
| --- | --- | --- |

| Occupation Admissions Senior Associate Director of Admiss | Title Senior Associate Director | Date of Full-Time Employment MM 04 DD 21 YY 09 | No. Hours Worked Per Week _____ ☐ Union ☐ NonUnion |
| --- | --- | --- | --- |

| Marital Status ☒ Single ☐ Married ☐ Widowed ☐ Divorced | Dependent Children ☐ No☐ Yes If Yes, # |
| --- | --- |

## 2. ENROLLMENT

If enrolling for Dental or Vision benefits, list name, relationship to you, and date of birth for each dependent to be insured.

PLEASE LIST ADDITIONAL DEPENDENTS ON A SEPARATE SHEET.

Give policy number, name and address of current employer's prior group insurance carrier, if you and your dependents were insured. Indicate your effective and termination dates of coverage also.

| Name | Relationship Self Sp. Ch. | Date of Birth MM/DD/YY | Sex |
| --- | --- | --- | --- |
| SELF | ☒ | | |
| | | | |
| | | | |
| | | | |
| | | | |

## 3. Supplemental Life Benefit. If this benefit is a plan option and you wish to enroll for Supplemental Life coverage, please indicate

The amount for: Employee $ _____ Dependent $ _____

## 4. Beneficiary Designation: as is

EX: MARY A. JONES, WIFE    First Name    Initial    Last Name    Relationship

NOT MRS. JOHN JONES

## 5. REFUSAL OF COVERAGE (Note: Benefits provided on a non-contributory basis cannot be refused)

I was given the opportunity to enroll in this plan for group insurance offered by my employer/association and insured by American International Life Assurance Company of New York.

I am refusing:
☐ LTD
☐ STD
☐ Life/AD&D
☐ Dependent Life
☐ Supplemental Life/AD&D
☐ All coverages offered

Dental:
☐ Employee & Dependents
☐ Spouse
☐ Child(ren)
☐ All Dependents

Vision:
☐ Employee & Dependents
☐ Spouse
☐ Child(ren)
☐ All Dependents

**MUST ANSWER IF YOU ARE REFUSING EMPLOYEE, SPOUSE AND/OR CHILD COVERAGE:**

Are you or your dependents now covered by any other group plan?  ☐ YES  ☐ NO  (Your dependent(s) may be insured by this Plan even if they are insured elsewhere)

If Yes: Policyholder's Name _____ Carrier _____

I understand that if I am refusing insurance because I am insured under another applicable insurance plan, I may be added to this plan under the same terms and conditions with respect to pre-existing conditions and their limitations as if I enrolled when initially eligible. I understand that I must request enrollment within 31 days following the termination of the other applicable insurance plan.

If Dental coverage is refused, I understand that my benefits may be reduced if I later wish to enroll for this coverage.

I must furnish, at my expense, **evidence of insurability** satisfactory to American International Life Assurance Company of New York if I later wish to enroll in any other coverage that is now being refused.

_____ DATE OF REFUSAL    _____ SIGNATURE IF REFUSING ANY COVERAGE

**\*IF REFUSING ALL COVERAGES, IT IS NOT NECESSARY TO COMPLETE THE REMAINDER OF THIS FORM.**

## 6. AUTHORIZATION

• I hereby certify that all information furnished is true to the best of my knowledge.

• I request group insurance for which I am or may become eligible.

• If I am required to contribute to the premium for any coverage elected on this form, I hereby authorize my employer to deduct such contributions in advance from wages due me, for remittance to American International Life Assurance Company of New York.

• I designate the beneficiary named on this form to receive the proceeds, if any, payable upon my death.

• If dental care or health care is provided by a participating provider, all benefits will be paid directly to the provider by American International Life Assurance Company of New York.

• I authorize any insurer or employer or any consumer reporting agency acting on its behalf to give to American International Life Assurance Company of New York information about me. Such information will pertain to my employment or other insurance coverage.

04 21 2009
DATE SIGNED

_____
APPLICANT'S SIGNATURE

06673221-1009NY R02/05

# MetLife®

Metropolitan Life Insurance Company, New York, NY
Small Market Administration
P.O. Box 14593, Lexington, KY 40512-4593
Fax: 1-888-505-7446

## ENROLLMENT FORM FOR GROUP INSURANCE
**SECTION TO BE COMPLETED BY EMPLOYEE**          (PLEASE PRINT)

| Name of Employee   Last        First        Middle | Social Security No. | Date of Birth (Mo./Day/Yr.) | ☐ Male |
|---|---|---|---|
| Pahuja  Rajeev | | | ☐ Female |

| Employee's Address      Street | City   State   Zip Code | Marital Status: | ☒ Single | ☐ Married |
|---|---|---|---|---|
| 2 Wall Street | New York NY | | ☐ Widowed | ☐ Divorced |

| Employee's E-mail Address  rpahuja@avamed.org | Phone No. (include area code) |
|---|---|

| Name of Employer | Customer Number | Division | Class | Dept Code |
|---|---|---|---|---|
| Greater Caribbean Learning Resources, LLC | | | | |

| Employer's Street Address | City | State | Zip Code | Employee's Work Location |
|---|---|---|---|---|
| 2 Wall Street | New York | NY | 10005 | |

| Date of Hire (Mo./Day/Yr.) | ☐ Full-Time  ☐ Part-Time | Employee's Occupation | Coverage Effective Date (Mo./Day/Yr.) 04/01/2008 |
|---|---|---|---|

| Work Status: ☒ New Hire  ☐ Active ☐ Retired ☐ Disabled  ☐ Rehire  ☐ On Layoff/Leave of Absence | Hours Worked Per Week | ☐ Hourly Paid ☐ Annual ☐ Monthly | Salary $ |
|---|---|---|---|

Reason for Enrollment:
☐ New Coverage          ☐ New Hire/First Time Eligible          ☐ Late Enrollee **(Statement of Health Required)**
☐ Change in Coverage Amount Requested          ☐ Change in Enrollment Other Than Coverage Amount
☐ Family Status Change (not applicable to new enrollments)  Date (Mo./Day/Yr.) _____

---

**COVERAGE REQUEST DATA:**
I have received and read a copy of my employer's current announcement of the group plan.  I want to be covered under the group plan for the benefits for which I am or may become eligible, requested below.
I request the following coverage:

**Employee Coverage**
☐ Basic Life/Accidental Death & Dismemberment (AD&D) (or Core):  Coverage Requested $ _____
☐ Enhanced Optional Life (or Buy up):  Coverage Requested $ _____ (Not to exceed 5x Basic Annual Earnings)

**Dependent Spouse Coverage**
☐ Dependent Spouse Life*  (*Amounts will be subject to state limits, if applicable.)
☐ Enhanced Dependent Spouse Life (or Buy-Up):*  Coverage Requested $ _____ (Not to exceed 50% of Employee amount)

**Dependent Child Coverage**
☐ Dependent Child Life*  (*Amounts will be subject to state limits, if applicable.)
☐ Enhanced Dependent Child Life (or Buy-Up):*  Coverage Requested $ _____

☐ **I wish to DECLINE any coverage not checked above for which I may be eligible.**  For Life coverage, I understand that I will be required to submit evidence of my and/or my dependents' good health satisfactory to MetLife if I request this coverage after my initial period for enrollment has expired.
Reason for declining employee and/or dependent coverage (i.e. benefits elsewhere, cost, other): _____

---

**Please Retain A Copy Of The Fully-Completed Form For Your Records And Return The Original To Your Employer**
(Continued on Following Page)

A8400NW (05/07)

If applying for Dependent coverage (Spouse or Child), complete the following:

Number of dependents (including spouse) _____

| Name of Spouse (Last, First, MI) | Date of Birth | Sex (M/F) | |
|---|---|---|---|
| _____ | _____ | _____ | |

| Name(s) of Child(ren) (Last, First, MI) | Date of Birth | Sex (M/F) | Is child a full-time student? |
|---|---|---|---|
| _____ | _____ | _____ | ☐ Yes |
| _____ | _____ | _____ | ☐ Yes |
| _____ | _____ | _____ | ☐ Yes |
| _____ | _____ | _____ | ☐ Yes |

For employees electing Enhanced Optional Life (or Buy-Up) and Enhanced Dependent Life (or Buy-Up) Insurance, please answer the following question:

Have you been Hospitalized (as defined below) during the 90 days preceding the date of this enrollment form?

**Employee** ☐ Yes ☐ No   **Spouse** ☐ Yes ☐ No   **Child(ren)** ☐ Yes ☐ No

If the answer to the Hospitalization question is "Yes," a Statement of Health form is required for each person answering "Yes."

Hospitalized means admission for inpatient care in a hospital; receipt of care in a hospice facility; intermediate care facility, or long term care facility, or receipt of the following treatments wherever performed: chemotherapy, radiation therapy, or dialysis.

GEF02-1
ADM

## DECLARATION SECTION

Each person signing below **declares** that all the information given in this enrollment form, including any medical questions, is true and complete to the best of his/her knowledge and belief. Each person understands that this information will be used by MetLife to determine his or her insurability.

The employee **declares** that he or she is actively at work on the date of this enrollment form and, for purposes of any contributory life insurance, that he or she was actively at work for at least 20 hours during the 7 calendar days preceding the date of enrollment. In addition if the employee is not actively at work on the scheduled Effective Date of contributory life insurance, such insurance will not take effect until the employee returns to active work.

On the date dependent insurance for a person is scheduled to take effect, the dependent must not be confined at home under a physician's care, receiving or applying for disability benefits from any source, or Hospitalized. If the dependent does not meet this requirement on such date, the insurance will take effect on the date the dependent is no longer confined, receiving or applying for disability benefits from any source, or Hospitalized. **Hospitalized** means admission for inpatient care in a hospital; receipt of care in a hospice facility; intermediate care facility, or long term care facility, or receipt of the following treatments wherever performed: chemotherapy, radiation therapy, or dialysis.

### For the Accelerated Benefits Option
Life Insurance may include an Accelerated Benefits Option under which a terminally ill insured can accelerate a portion of his or her life insurance amount. Receipt of accelerated benefits may affect eligibility for public assistance and an interest and expense charge may be deducted from the accelerated payment.

### For Changes Requested After Initial Enrollment Period Expires
I understand that if life coverage is not elected, or if the maximum coverage is not elected, evidence of insurability satisfactory to MetLife may be required to elect or increase such coverage after the initial enrollment period has expired. Coverage will not take effect, or it will be limited, until notice is received that MetLife has approved the coverage or increase.

### For Payroll Deduction Authorization By the Employee
I authorize my employer to deduct the required contributions from my pay for the coverage requested in this enrollment form. This authorization applies to such coverage until I rescind it in writing.

### Fraud Warning:
If you reside in or are applying for insurance under a policy issued in one of the following states, please read the applicable warning.

<u>New York</u> [only applies to Accident and Health Benefits (AD&D/Disability/Dental)]: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

<u>Florida</u>: Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

<u>Massachusetts</u>:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, and may subject such person to criminal and civil penalties.

<u>New Jersey</u>:  Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

<u>Oklahoma</u>: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

<u>Kansas, Oregon, and Vermont</u>:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud, and may be subject to criminal and civil penalties.

<u>Puerto Rico</u>: Any person who, knowingly and with the intent to defraud, presents false information in an insurance request form, or who presents, helps or has presented, a fraudulent claim for the payment of a loss or other benefit, or presents more than one claim for the same damage or loss, will incur a felony, and upon conviction will be penalized for each violation with a fine no less than five thousand (5,000) dollars nor more than ten thousand (10,000), or imprisonment for a fixed term of three (3) years, or both penalties. If aggravated circumstances prevail, the fixed established imprisonment may be increased to a maximum of five (5) years; if attenuating circumstances prevail, it may be reduced to a minimum of two (2) years.

<u>Virginia and Washington</u>:  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

<u>All other states</u>:
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and may subject such person to criminal and civil penalties.

## BENEFICIARY DESIGNATION FOR EMPLOYEE INSURANCE (Dependent Insurance is Payable to the Employee)

The Employee signing below names the following person(s) as primary beneficiary(ies) for any MetLife payment upon his or her death.  For any other type of beneficiary, please use a beneficiary designation form available from your employer.  The Employee understands that he or she has the right to change this designation at any time.

| Primary Beneficiary Full Name (Last, First, Middle Initial) | Relationship | Date of Birth (Mo./Day/Yr.) | Address (Street, City, State, Zip) | Share % |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| Payment will be made in equal shares or all to the survivor unless otherwise indicated. | | | TOTAL: | 100% |

If the Primary Beneficiary(ies) die before me, I designate as Contingent Beneficiary(ies):

| Contingent Beneficiary Full Name (Last, First, Middle Initial) | Relationship | Date of Birth (Mo./Day/Yr.) | Address (Street, City, State, Zip) | Share % |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| Payment will be made in equal shares or all to the survivor unless otherwise indicated. | | | TOTAL: | 100% |

**Signature(s):**  The employee must sign in all cases.  Each person signing below acknowledges that they have read and understand the statements and declarations made in this enrollment form.

_____          _____          _____
Employee Signature                         Print Name                                    Date Signed (Mo./Day/Yr.)

Proposed Insured(s) if other than employee and at least 18 years of age:

_____          _____          _____
Other Signature                              Print Name                                    Date Signed (Mo./Day/Yr.)

_____          _____          _____
Other Signature                              Print Name                                    Date Signed (Mo./Day/Yr.)

GEF02-1a
DEC

# Privacy Notice

**If you submit a request for insurance (enrollment form) we will evaluate it. We will review the information you give to us and we may confirm it or add to it in the ways explained below.**

**This Privacy Notice is given to you on behalf of Metropolitan Life Insurance Company.**

**Please read this Privacy Notice carefully.** It describes in broad terms how we learn about you and how we treat the information we get about you. (If anyone else is to be insured under the coverage you've requested, what we say here also applies to information about him or her.) We are required by law to give you this notice.

**Why We Need Information:** We need to know about you (and anyone else to be insured) so that we can provide the insurance and other products and services you've requested. We may also need it to administer your business with us, evaluate claims, process transactions and run our business. And we need information from you and others to help us verify identities in order to help prevent money laundering and terrorism.

What we need to know includes address, age and other basic information. We may also need more information. This may include information about finances, employment, health, hobbies or business conducted with us, with other MetLife companies (our "affiliates") or with other companies. Our affiliates currently include life, car and home insurers, securities firms, broker-dealers, a bank, a legal plans company and financial advisors.

**How We Get Information:** What we know about you (and anyone else to be insured) we get mostly from you. But we may also have to find out more from other sources to make sure that what we know is correct and complete. Those sources may include adult relatives, employers, consumer reporting agencies, health care providers and others. Some sources may give us reports and may disclose what they know to others. We may ask for medical information. The Authorization that you sign when you request insurance permits these sources to tell us about you. We may also, at our expense:

- Ask for a medical exam
- Ask health care providers to give us health data, including information about alcohol or drug abuse

We may also ask a consumer reporting agency for a "consumer report" about you (or anyone else to be insured). Consumer reports may tell us about a lot of things, including information about:

- Reputation
- Work and work history
- Driving record
- Hobbies and dangerous activities
- Finances

The information may be kept by the consumer reporting agency and later given to others as permitted by law. The agency will give you a copy of the report it provides to us, if you ask the agency and can provide adequate identification. If you write to us and we have asked for a consumer report about you, we will tell you so and give you the name, address and phone number of the consumer reporting agency.

Another source of information is MIB Group, Inc. ("MIB"). It is a non-profit association of life insurance companies. We and our reinsurers may give MIB health or other information about you. If you apply for life or health coverage from another member of MIB, or claim benefits from another member company, MIB will give that company any information that it has about you. If you contact MIB, it will tell you what it knows about you. You have the right to ask MIB to correct its information about you. You may do so by writing to MIB, Inc., P.O. Box 105, Essex Station, Boston, MA 02112, by calling MIB at (866) 692-6901 (TTY (866) 346-3642 for the hearing impaired), or by contacting MIB at www.mib.com.

**How We Protect Information:** Because you entrust us with your personal information, we treat what we know about you confidentially. Our employees are told to take care in handling your information. They may get information about you only when there is a good reason to do so. We also take steps to make our computer databases secure and to safeguard the information we have.

CPN - Inst – Enr - 2007

**How We Use and Disclose Information:** We may use what we know to help us serve you better. We may use it, and disclose it to our affiliates and others, for any purpose allowed by law. Generally, we will disclose only the information we consider reasonably necessary to disclose. For instance, we may use your information, and disclose it to others, in order to:

- Help us evaluate your request for a product or service
- Help us process claims and other transactions
- Confirm or correct what we know about you
- Help us prevent fraud, money laundering, terrorism and other crimes by verifying what we know about you

- Help us comply with the law
- Help us run our business
- Process information for us
- Perform research for us
- Audit our business

When we disclose information to others to perform business services for us, they are required to take appropriate steps to protect this information. And they may use the information only for the purposes of performing those business services. Other reasons we may disclose what we know about you include:

- Doing what a court or government agency requires us to do; for example, complying with a search warrant or subpoena;
- Telling another company what we know about you, if we are or may be selling all or any part of our business or merging with another company;
- Giving information to the government so that it can decide whether you may get benefits that it will have to pay for;
- Telling a group customer about its members' claims or cooperating in a group customer's audit of our service;
- Telling your health care provider about a medical problem that you have but may not be aware of;
- Giving your information to a peer review organization if you have health insurance with us; and
- Giving your information to someone who has a legal interest in your insurance, such as someone who lent you money and holds a lien on your insurance or benefits.

How we use and disclose information depends on the products and services you have with us or are covered under. It also depends on laws that apply to those products and services. Unless restricted by law or by agreement, we may use what we know about you to offer you our other products and services. We may share your information with other companies to help us. Here are our other rules on using your information to market products and services:

- We will not share information about you with any of our affiliates for use in marketing its products to you, unless we first notify you. You will then have an opportunity to tell us not to share your information by "opting out."
- Before we share what we know about you with another financial services company to offer you products or services through a joint marketing arrangement, we will let you "opt-out."
- We will not disclose information to unaffiliated companies for use in selling their products to you, except through such joint marketing arrangements.
- We will not share your health information with any other company, even one of our affiliates, to permit it to market its products and services to you.

**How You Can See and Correct Your Information:** Generally, we will let you review what we know about you if you ask us in writing. (Because of its legal sensitivity, we will not show you anything that we learned in connection with a claim or lawsuit.) In some circumstances we may disclose what we know about your health through your health care provider. If you tell us that what we know about you is incorrect, we will review it. If we agree with you, we will correct our records. If we do not agree with you, you may tell us in writing, and we will include your statement if we give this information to anyone outside MetLife.

**You Can Get Other Material from Us:** In addition to any other privacy notice we may give you, we must give you a summary of our privacy policy once each year. You may have other rights under the law. If you want to know more about our privacy policy, please visit our website, www.metlife.com, or write to Metropolitan Life Insurance Company, c/o MetLife Privacy Office - Inst, P.O. Box 489, Warwick, RI 02887-9954. When writing to us, please identify the specific product or service you have with us

**GUARDIAN** • Please Print clearly and in Black or Blue ink   • Please Print in Capital Letters only

ENROLLMENT/CHANGE FORM
LIFE/LONG TERM DISABILITY

| Plan/Group Name (Company Name) | Group Plan Number | Division | Class |
|---|---|---|---|
| QUENTIN ROAD BIBLE BAPTIST | 00494211999 | | |

PLEASE CHECK APPROPRIATE BOX

☒ Add Employee  ☐ Add Spouse
☒ New Hire
☐ Previously refused this coverage
☐ Loss of Other Coverage
(Complete Sections 1, 3, 4, 6)

☐ Marriage Date
☐ Previously refused this coverage
☐ Loss of Other Coverage
(Complete Section 5 if applicable)

**Initial Enrollment/Refusal of Coverage**
(Complete Sections 1, 3, 4, 6)

☐ Add Employee/Dependents
(Complete Sections 1, 3, 5, 6)

☐ Add Children
☐ Newborn
☐ Previously refused this coverage
☐ Adoption Date
☐ Loss of Other Coverage
(Complete Section 5 if applicable)

☐ Drop/Refuse Coverage
(Complete Section 6)
(The date of withdrawal cannot be prior to the date this form is completed and signed.)
☐ Drop Employee (Complete Section 4)
☐ Termination of Employment*
☐ Retirement*
*Last Day Worked __/__/__
*Last Day of Coverage __/__/__
☐ Other

☐ Information Change
(Complete Section 6)
☐ Drop Dependents (Complete Section 4)
Last Day of Coverage __/__/__

**SELECT COVERAGE(S):** Dependents cannot be enrolled for coverages refused by the employee.
☐ Life  ☐ Employee ☐ Spouse ☐ Child(ren)
☐ AD&D  ☐ Employee ☐ Family (includes EE, Sp, Ch)
☒ Long Term Disability (if applicable, choose one option below)
☐ Buy-Up ☐ Flex AbilityGuard $____ up to 60% of salary

**REFUSE/DROP COVERAGE(S):** (See Refusal on back)
☐ Life  ☐ Employee ☐ Spouse ☐ Child(ren)
☐ AD&D  ☐ Employee ☐ Family (includes EE, Sp, Ch)
☐ Long Term Disability
☐ I have been offered the above coverages and wish to refuse/drop enrollment for the following reasons:
☐ Covered under another insurance plan
☐ Other _____
(additional information may be required)

**LOSS OF OTHER COVERAGE:**
☐ I and/or my dependents were previously covered under another group plan. Loss of coverage was due to:
Termination of Employment __/__/__
Divorce __/__/__
Death of Spouse __/__/__
Term./Expiration of Coverage __/__/__

| | Add Dep Last | First | MI | Sex | Birth Date (MM DD YYYY) | Social Security Number |
|---|---|---|---|---|---|---|
| Employee Name | DAHUITA | RATE | | M F | HAMDEN | |

Street address: 551 DWELL DRIVE    City: ___   State: ___  ZIP: ___

Home Phone ( ___ ) ___   Marital Status: ☒ Single ☐ Married   Occupation/Job Title: ___

Are you: ☒ Actively at work ☐ Retired ☐ Other    Date of Full Time Hire (MM DD YYYY): 04 21 2009

Number of hours worked per week: 37.5   Annual Salary (nearest dollar): $___

| | Add Mo Day Last | First | MI | Sex | Student | Birth Date (MM DD YYYY) | Social Security Number |
|---|---|---|---|---|---|---|---|
| Spouse Name | | | | M F | Y N | | |
| Child Name | | | | M F | Y N | | |
| Child Name | | | | M F | Y N | | |
| Child Name | | | | M F | Y N | | |
| Child Name | | | | M F | Y N | | |

A) Have you included stepchildren? ☐ Yes ☒ No   Are they dependent upon you for support and maintenance? ☐ Yes ☐ No
B) Is this your first eligible child? ☐ Yes ☒ No   If "no," please list all eligible children above.

Beneficiary Designation: (Include full proper name and relationship)   Name: ___   Relationship: ___

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud. The information provided above is true and correct to the best of my knowledge, and I accept the provisions on the reverse side of this form which I have read and understand.

Signature: _____   Date (MM DD YYYY): 04 21 2009

GG-013374L/LTD  6/05

GCLR, LLC

EMPLOYEE NON-DISCLOSURE AND

CONFIDENTIALITY AGREEMENT

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged by GCLR, LLC or its affiliates (Company), the undersigned employee hereby agrees and acknowledges:

That during the course of my employ there may be disclosed to me certain Company trade secrets consisting but not limited to: technical information including methods, processes, formulae, compositions, systems, techniques, inventions, machines, computer programs and research projects, and business information including perspective students, customer lists, pricing data, sources of supply, financial data and marketing, or merchandising systems or plans.

I agree that I shall not during, or at any time after the termination of my employment with the Company, disclose or divulge to others including future employers, any trade secrets, confidential information, or any other proprietary data of the Company or its affiliates in violation of this agreement.

That upon the termination of my employment from the Company: I shall return to the Company all documents and property of the Company, including but not necessarily limited to: drawings, blueprints, reports, manuals, correspondence, customer lists, computer programs, and all other materials and all copies thereof relating in any way to the Company's business, or in any way obtained by me during the course of employ.

I further agree that I shall not retain copies, notes or abstracts of the foregoing.

The Company may notify any future or prospective employer or third party of the existence of this agreement, and shall be entitled to full injunctive relief, and any other legal remedies available for any breach.

This agreement shall be binding upon me and my personal representatives and successors in interest, and shall inure to the benefit of the Company, its successors and assigns.

Signed this 21st day of April , 2009 .


Roze Pahua

Company Employee

EXHIBIT B



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>RAJEEV PAHUJA,<br><br>                          **Complainant,**<br><br>           **v.**<br><br>AMERICAN UNIVERSITY OF ANTIGUA, C/O GREATER CARIBBEAN LEARNING RESOURCES,<br><br>                          **Respondent.** | DETERMINATION AND ORDER AFTER INVESTIGATION<br><br>Case No.<br>10135294 |

Federal Charge No. 16GA905137

On 7/22/2009, Rajeev Pahuja filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability, sexual orientation, marital status in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

Complainant, who suffers from Attention Deficit Disorder (ADD), is perceived as homosexual, and is single, has alleged disability, sexual orientation, and marital status discrimination. On 4/21/2009, Complainant was hired as senior associate director of admissions, nursing. Complainant stated that during the course of his employment, he received praise from Respondent and e-mails from his superiors calling his work "excellent." Complainant alleged that it took him additional time to become proficient in performing his duties and responsibilities because of his disability. He claimed that in May 2009, he advised Ms. McGillycuddy, Supervisor, that he had a

learning disability. Complainant stated that Respondent ignored his request for a reasonable accommodation. He alleged that he was asked by Ms. McGillycuddy whether he was gay and why he was not married. On 6/5/2009, Respondent terminated his employment.

During two NYSDHR conferences, Complainant failed to provide evidence to support his allegations of disability, sexual orientation, and marital status discrimination. He confirmed that he is unaware of the sexual orientation and marital status of his former co-workers because "he does not ask those types of questions." Complainant also stated that he did not respond when Ms. McGillycuddy asked him whether he was gay and why he was not married, during a road trip on 5/30/2009. He claimed that in the first couple of weeks of his employment, he verbally informed Ms. McGillycuddy that he had a disability and would need extra time and training for assignments. Complainant does not have any witnesses to support his allegations. Complainant stated that he did not submit any medical documentation and/or disability accommodation requests to Respondent, but verbally asked his supervisor.

Respondent denied, and our investigation failed to substantiate, Complainant's allegations that Respondent was made aware of his disability and that he made an accommodation request. Our investigation suggests that Complainant altered the e-mail that he provided as proof of his request. The e-mail subject line indicates that the e-mail will discuss a conference, and the majority of the e-mail discusses just that. However, piggybacked on a line thanking Ms. McGillycuddy for her ideas is the phrase "and wanted to inform that I have a learning disability that requires an accommodation." The disjointed nature of the sentence suggests that the phrase regarding the disability was added at a later time. Furthermore, the response from Ms. McGillycuddy of "Excellent! Thanks, Rajeev" makes little sense, if in fact the phrase about his disability were in the original e-mail. Respondent has also provided a copy of the original e-mail that does not include the aforementioned language regarding a disability or an accommodation request.

Complainant also alleges that he verbally told Ms. McGillycuddy about his disability and requested an accommodation early in his employment. However, given the Complainant's inability to provide a witness to the conversation, there is insufficient evidence to support that Respondent was aware of his disability and discrimination against him on that basis. Complainant submitted a letter dated 6/5/2009, his termination date, addressed to "Maire and Dick," indicating that his

vocational rehabilitation counselor would like to discuss his learning disability. However, the record does not support that this letter was submitted to the aforesaid addressees.

The record did not reveal evidence to support Complainant's claims of discrimination. As a non-discriminatory defense, Respondent averred, and Complainant did not submit evidence to dispute, that during Complainant's employment, Respondent was never made aware, neither verbally or in writing, that he had a disability or any specific medical conditions that would require special accommodation. Respondent maintains that Complainant was terminated because of inappropriate work behavior towards both co-workers and students, including not developing a rapport with other staff, discussing his poor interpersonal relationship with his family, and discussing his lack of a sex life. Respondent stated that he asserted an interest in dating students and business associates of the school and his employer. Respondent also stated that Complainant was incapable of performing any of his duties in a timely and proper manner and did not possess the skills and experience necessary to fulfill the position's duties. Respondent averred that although he was counseled and warned about his methods and conduct, Complainant repeatedly engaged his subordinates in a superior and condescending manner, he was not a team player, he had no supervisory skills, and his methods were both insulting and counterproductive. Respondent maintains that Complainant did not set up any meetings or make presentations in furtherance of creating productive and ongoing relationships with pre-professional academic advisors at colleges and universities within the area or with doctors and nursing staff. Respondent asserted that he lacked the public speaking and interviewing skills required to perform his duties.

The comparative data does not support a finding of discrimination. Respondent's attorney stated that Respondent does not ask for or maintain any information regarding its employees' marital status, sexual orientation, perceived sexual orientation, or disability. Complainant was informed, and did not dispute, that Respondent does not ask for or maintain the aforementioned information.

Respondent articulates legitimate and non-discriminatory business reasons, neither demonstrably pretextual nor otherwise unworthy of credence, for such decisions as may have been adverse to Complainant's employment interest. The allegations, standing alone, with an absence of witnesses or any other evidence, cannot justify a finding for the Complainant. The record failed to support Complainant's allegations of

disability, sexual orientation, and marital status discrimination. Based on the lack of a nexus between an adverse employment action and a discriminatory animus, the complaint should be dismissed.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under the Americans with Disabilities Act (ADA). Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:    **JAN 1 2 2011**
          Brooklyn, New York

                              STATE DIVISION OF HUMAN RIGHTS


                   By:    _____
                          Leon C. DiMaya
                          Regional Director

EXHIBIT C

NEW YORK STATE
DIVISION OF HUMAN RIGHTS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RAJEEV PAHUJA                                           Case #10135294

                      Plaintiff          **RESPONSE OF GCLR, LLC**
                                                **TO AMENDED COMPLAINT**
      -against-          **OF RAJEEV PAHUJA**


AMERICAN UNIVERSITY OF ANTIGUA

                              Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


Marie McGillycuddy, being first duly sworn, deposes and says:


1.      The amendments to Rajeev Pahuja's complaint in this matter have no basis in fact; nor has Mr. Pahuja provided any evidence to support them.


2.      GCLR, LLC employs approximately seventy people in its New York offices. Many of GCLR's employees are married and many are not. Neither marital status nor sexual orientation is a consideration of GCLR in determining who it hires and who it continues to employ.


3.      The determinations made in Mr. Pahuja's case were not based on his marital status or sexual orientation

WHEREFORE, your affiant, on behalf of GCLR, LLC and, to the extent necessary, American University of Antigua, respectfully requests that Mr. Pahuja's amended complaint be dismissed as meritless.

Marie McGillycuddy

Sworn to before me this 16th day of March, 2010

Notary Public

LEO... ...
Notary Public ... ... York
No. ... ...
Qualifi... ... ... County
Commission Expires December 20, 20...

EXHIBIT D

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Rajeev Pahuja
55 Duel Drive
Hamden, CT 06518

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2009-05137 | Holly M. Woodyard, Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Elizabeth Grossman,
Acting District Director

March 31, 2011

(Date Mailed)

Enclosures(s)

cc: AMERICAN UNIVERSITY OF ANTIGUA, C/O
GREATER CARIBBEAN LEARNING RESOURCES
Attn: Director of Human Resources
2 Wall Street, 10th Floor
New York, NY 10005

Leonard Scalafani, Esq.
2 Wall Street, 5th Floor
New York, NY 10005

EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**11 cv. 4607**

*Rajeev Pahuja*

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

*American University of Antigua,*
*C/O Greater Carribean Learning*
*Resources.*
*(In the space above enter the full name(s) of the defendant(s).*
*If you cannot fit the names of all of the defendants in the space*
*provided, please write "see attached" in the space above and*
*attach an additional sheet of paper with the full list of names.*
*Typically, the company or organization named in your charge*
*to the Equal Employment Opportunity Commission should be*
*named as a defendant. Addresses should not be included here.)*

**COMPLAINT**
**FOR EMPLOYMENT**
**DISCRIMINATION**

Jury Trial:  ☐ Yes  ☒ No
*(check one)*

RECEIVED
JUN 24 2011
PRO SE OFFICE

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

———— Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

———— Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
*NOTE: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

———— New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

☒ New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

## I.      Parties in this complaint:

A.    List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff        Name    _Rajeev Pahuja_
                 Street Address   _55 Duel Drive_
                 County, City   _Hamden_
                 State & Zip Code   _CT, 06518_
                 Telephone Number   _(203)-589-5557_

B.    List all defendants' names and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant        Name    _American University of Antigua c/o GreaterCaribbean Learning Resources_
                 Street Address   _2 Wall Street, 10th Floor_
                 County, City   _New York, NY_
                 State & Zip Code   _NY, 10005_
                 Telephone Number   _—_

C.    The address at which I sought employment or was employed by the defendant(s) is:

                 Employer   _____
                 Street Address   _____
                 County, City   _____
                 State & Zip Code   _____
                 Telephone Number   _____

## II.      Statement of Claim:

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events. Describe how you were discriminated against. If you are pursuing claims under other federal or state statutes, you should include facts to support those claims. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

        _____        Failure to hire me.

        __X__          Termination of my employment.

        _____        Failure to promote me.

        __X__          Failure to accommodate my disability.

        __X__          Unequal terms and conditions of my employment.

X ___   Retaliation.

___   Other acts (specify): _____.

*Note:   Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.   It is my best recollection that the alleged discriminatory acts occurred on: 06/05/09 .
*Date(s)*

C.   I believe that defendant(s) *(check one)*:

I don't know   is still committing these acts against me.   don't know

___   is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☐ race _____   ☐ color _____

☐ gender/sex _____   ☐ religion_____

☐ national origin _____

☐ age.   My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☒ disability or perceived disability suffer from ADD (specify) (Attention Deficit Disorder)

E.   The facts of my case are as follow *(attach additional sheets as necessary)*:

See the attached documents and letter from my rehabilitation counselor. The defendants attorney has stated they do not maintain records such as application forms submitted by applicants or records related to requests for reasonable accomidation based on disability. The American with Disabilities Act requires that employees post a notice describing the provisions of the ADA. ADA/CCLR does not have a clearly defined procedure in the employee handbook for employee

*Note:   As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

for to request accomodat. for the disability

III.   **Exhaustion of Federal Administrative Remedies:**

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: 7/22/09 _____ *(Date)*.

*Rev. 05/2010*

3

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue letter.

____✗____    issued a Notice of Right to Sue letter, which I received on __4/5/11__ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: __backpay, emotional distress, and__

__front pay.__

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _29th_ day of ___June___, 20_11_.

Signature of Plaintiff    _____

Address    __55 Duel Drive__

__Hamden, CT 06518__

Telephone Number    __(203)-589-3537__

Fax Number *(if you have one)* _____

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Rajeev Pahuja**
**55 Duel Drive**
**Hamden, CT 06518**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2009-05137 | Holly M. Woodyard, Investigator | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☒  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Elizabeth Grossman_                                    March 31, 2011

**Elizabeth  Grossman,**                                    (Date Mailed)
**Acting District Director**

Enclosures(s)

cc:    **AMERICAN UNIVERSITY OF ANTIGUA, C/O**
**GREATER CARIBBEAN LEARNING RESOURCES**
**Attn: Director of Human Resources**
**2 Wall Street, 10th Floor**
**New York, NY 10005**

Leonard Scalafani, Esq.
2 Wall Street, 5th Floor
New York, NY 10005



**STATE OF CONNECTICUT**
DEPARTMENT OF SOCIAL SERVICES
BUREAU OF REHABILITATION SERVICES
249 THOMASTON AVENUE • WATERBURY, CT 06702



September 8, 2009

Jeanne L. Ortiz
New York Division of Human Rights
One Fordham Plaza – 4th Floor
Bronx, NY 10458

Dear Ms. Ortiz,

At the request of Mr. Rajeev Pahuja, I am submitting this correspondence to you.
I am a Vocational Rehabilitation Counselor with the State of Ct, Bureau of Rehabilitation
Services. The Bureau of Rehabilitation Services assists eligible persons with disabilities in
preparing for, obtaining & retaining employment. The Bureau of Rehabilitation Services has
been working with Raj Pahuja since 2002.

On June 5, 2009 there was a conference call involving myself, Raj Pahuja, Dick Woodward of
American University of Antigua and Marie McGillycuddy of American University of Antigua
(this conference call was arranged in follow-up to a phone call that I had received from Raj
Pahuja earlier that day indicating that he was being terminated from his job. In this call, Raj
asked me to contact Marie McGillycuddy in an effort try and help him retain his position).

In this conference call, I explained the Bureau of Rehabilitation Services. I described services
available such as On-the-Job Training, Job Coaching to help an individual retain his/her job.

I asked if there were specific reasons for Raj being let go. Mr. Woodward indicated that there
weren't any specific reasons for the termination. Mr. Woodward added that they liked Raj
personally but that they (AUA) thought that it wasn't working out. Mr. Woodward stated that
they thought Raj had more managerial experience which is what they needed.

Feel free to contact me with any questions or if I can provide further information. Thank you for
assistance.

Respectfully,

David Carpino
Senior Vocational
Rehabilitation Counselor



*Valli Kane & Vagnini*

*Attorneys at Law*

600 Old Country Road
Suite 519
Garden City, NY 11530

Tel: 516-203-7180
Fax: 516-706-0248
www.vkvlawyers.com

July 2, 2009

**Via U.S. Mail & Facsimile**
Leonard Sclafani, Esq.
General Counsel
American University of Antigua
2 Wall Street, 10th Floor
New York, N.Y. 10005

Re: Rajeev Pahuja

Dear Mr. Sclafani:

We have been retained by Mr. Pahuja, a former employee, regarding his recent termination and claims of discrimination against your company. Mr. Pahuja was an outstanding employee with your company during the short period that he was employed. Recently, he was told that he could not perform the job duties assigned and was having problems with his training. He informed the University that he suffers from a learning disability and would need a small amount of additional time to complete his training. This request was denied despite the request being entirely reasonable. As a result Mr. Pahuja was terminated. Under the Americans with Disabilities Act an employer must give a reasonable accommodation for an employee suffering from a disability, such as Mr. Pahuja's. Mr. Pahuja's termination is clearly impermissible and illegal under Federal, State and City laws.

Given the financial and emotional harm resulting from this overt act of discrimination, we have been retained to preserve all of Mr. Pahuja's legal rights.[1] However, Mr. Pahuja has authorized us to contact you to explore the prospect of reaching an amicable and confidential resolution to this matter. Should you be interested in exploring such a possibility, please contact the undersigned. We cannot, however, wait indefinitely for a response. To that end, if we do not hear from you or a representative within ten (10) days from the above date, we will have no choice but to commence formal proceedings.

Very truly yours,

VALLI KANE & VAGNINI, LLP

Jesse C. Rose

---

[1]   This letter is a notice of intent to sue. Any and all records, recordings, or information, including electronic mail and records, in any way relating to Mr. Pahuja should be preserved at once.

*Chart copy*

# amily Counseling
# f Cheshire

345 Highland Ave., Unit 102 ~ Cheshire, CT. 06410-2550
(203) 250-9654 ~ Fax (203) 271-3575

September 26, 2006

RE:  Rajeev Pahuja
DOB:  9/27/1976

To Whom It May Concern:

Rajeev Pahuja is under my care and on medication.  He is being treated for Adult
Attention Deficit Disorder and associated learning disabilities.

He is an intelligent man; eager to return to work and his medication should be very
helpful in improving his work skills.

Sincerely,

Robert H. Peters, M.D.
Attending Psychiatrist

EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RAJEEV PAHUJA,                                       :
                                                     :
                                    Plaintiff,       :
                                                     :           11 Civ. 4607 (PAE)
                        -v-                           :
                                                     :               ORDER
AMERICAN UNIVERSITY OF ANTIGUA, *c/o Greater*        :
*Caribbean Learning Resources*,                      :
                                                     :
                                    Defendant.       :
                                                     :
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On February 22, 2012, defendant the American University of Antigua was served with
process by the United States Marshals at the following address:

Leonard Sclafani, Esq.
American University of Antigua c/o Greater Caribbean Learning Resources
2 Wall Street, 10th Floor
New York, NY 10005-2043

Defendant was to answer, move, or otherwise respond to the complaint by March 14,
2012.  To date, no answer, motion, or response has been received.  Defendant is hereby
ORDERED to respond to the Complaint by June 15, 2012 or the Court may enter a default
judgment in plaintiff's favor.

The Clerk of Court is directed to send a copy of this order to the defendant at the above
address.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 24, 2012
        New York, New York

EXHIBIT G

**Full docket text for document 15:**

MARSHAL'S PROCESS RECEIPT AND RETURN OF SERVICE EXECUTED Summons and Complaint served. American University of Antigual served on 2/22/2012, answer due 3/14/2012. Service was accepted by Leonard Sclafani (General Counsel). Service was made by Mail. Document filed by Rajeev Pahuja. (ft)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/14/2012 11:36:40 | | | |
| PACER Login: | ls1860 | Client Code: | aua |
| Description: | History/Documents | Search Criteria: | 1:11-cv-04607-PAE |
| Billable Pages: | 1 | Cost: | 0.10 |

STATE OF NEW YORK, COUNTY OF NEW YORK

I, LEONARD A. SCLAFANI, an attorney duly licensed to practice before this court, affirm under penalty of perjury as follows:

I am counsel defendant, American University of Antigua, in this action.

On June 15,, 2015, I served the within Notice of Motion and supporting papers, Memorandum of Law and Rule 7.1 Statement on plaintiff by depositing true copies thereof enclosed in a post paid wrapper into the care and custody of the U.S. Postal Service, all due fees prepaid and addressed to each of the following persons at the last known address set forth after each name:

Rajeev Pahuja
55 Duel Drive
Hamden, CT. 06518

Leonard A. Sclafani, Esq. (ls8306)