UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                                     :

RAJEEV PAHUJA,                                        :

                                               :          11 Civ. 4607 (PAE)

                            Plaintiff,        :

                                             :          <u>OPINION & ORDER</u>

                   -v-                       :

                                             :

AMERICAN UNIVERSITY OF ANTIGUA, C/O     :
GREATER CARIBBEAN LEARNING RESOURCES,   :

                                             :

                           Defendant.    :

                                           :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Rajeev Pahuja, proceeding *pro se*, brings claims of discrimination and retaliation against American University of Antigua c/o Greater Caribbean Learning Resources (collectively, "AUA"), under 42 U.S.C. §§ 12112–12117 ("Americans with Disabilities Act of 1990" or "ADA") and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8–101 *et seq.* ("NYCHRL"). Pahuja alleges that AUA unlawfully discriminated against him and wrongfully terminated him on the basis of his attention deficit disorder disability. AUA moves to dismiss Pahuja's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, AUA's motion to dismiss is granted in part and denied in part.

## I. Background

### A. Standards Applicable To Pahuja's Complaint and Appended Materials

      In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012); *Holmes v. Grubman*, 568 F.2d 329, 335 (2d Cir. 2009); *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 152 (2d Cir. 2002).  The Court may consider not only the complaint itself, but also any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, and documents that are "integral" to the complaint even if they are not incorporated by reference.  *Chambers*, 282 F.3d at 152–53.  Although a court generally may not look outside the pleadings when reviewing a 12(b)(6) motion to dismiss, because a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition papers, so long as the allegations are consistent with the complaint.  *See, e.g.*, *Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *cf. Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to the allegations in the complaint).

Although this Court is mindful of the "special solicitude" afforded to a *pro se* plaintiff, *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012), courts cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  The Court may not "excuse frivolous or vexatious filings by *pro se* litigants," *Iwachiw v. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005); and *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law," *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (citation omitted).

Here, Pahuja has appended the following exhibits to his Complaint, Dkt. 2:  a copy of the Equal Employment Opportunity Commission's ("EEOC") Dismissal and Notice of Rights

("EEOC Notice"); a letter from David Carpino, a Vocational Rehabilitation Counselor with the State of Connecticut Bureau of Rehabilitation Services ("Carpino Letter"); a letter to AUA from an attorney initially retained by Pahuja, Jesse Rose, which functioned as a notice of intent to sue and an invitation to discuss potential settlement ("Rose Letter"); and a letter from Dr. Robert H. Peters, Attending Psychiatrist at Family Counseling of Cheshire as of September 2006, stating that Pahuja was being treated for attention deficit disorder and associated learning disabilities ("Peters Letter").  To his brief in opposition to AUA's motion to dismiss, Dkt. 24 ("Pl. Br."), Pahuja has attached his offer of employment from AUA ("Pl. Br. Ex 1 (Offer Letter)").  Pahuja has also submitted a document entitled "Memorandum of Law in Support of Sur-Reply (Rebuttal) in Affirmation of Support of Plaintiff's Opposition to Motion To Dismiss, Plaintiff's Sur-Reply (Rebuttal) to Defendant's Reply in Opposition to Motion To Dismiss," Dkt. 26 ("Pl. Sur-Reply").  That document attaches as its first exhibit both the Offer Letter and AUA's job listing to fill Pahuja's position after he was terminated ("Job Listing"); the second exhibit consists of an affidavit from Pahuja ("Pahuja Affidavit") containing a detailed timeline of events, and appears to be the same affidavit that Pahuja submitted to the New York State Division of Human Rights.  The Court therefore considers all facts contained within the documents described above to the extent they are consistent with Pahuja's Complaint.

### B.  Pahuja's Factual Allegations

Based on the Court's liberal construction of Pahuja's sparse Complaint and the materials submitted with it, Pahuja alleges the following:

Beginning in at least 2002, Pahuja received assistance in finding employment from the State of Connecticut Department of Social Services Bureau of Rehabilitation Services.  Carpino Letter.  The Bureau of Rehabilitation Services assists eligible persons with disabilities in

3

preparing for, obtaining, and retaining employment.  *Id*.  As of September 26, 2006, Pahuja had attention deficit disorder and associated learning disabilities and was being treated by Dr. Robert H. Peters.  Peters Letter.

On April 21, 2009, Pahuja was hired as the "Senior Associate Director of Admissions, Nursing" at the University of Antigua College of Medicine.  Pahuja Affidavit ¶ 5.  Pahuja claims that during the course of his employment, he received praise from AUA and his superiors, who, in emails, called his work "excellent."  *Id.* ¶¶ 12–17.  Pahuja also alleges that, because of his disability, it took him additional time to become proficient with his job duties.  *Id*. ¶ 26.  On May 5, 2009, Pahuja alleges, he told his supervisor, Marie McGillycuddy, in an email, that he had a learning disability and would need a reasonable accommodation.  *Id*. ¶ 19.  According to Pahuja, this request was ignored.  *Id*.

On June 5, 2009, AUA terminated Pahuja's employment. *Id*. ¶ 23.  That same day, Pahuja called David Carpino and reported that he was being terminated from his job.  Carpino Letter.  Pahuja asked Carpino to contact McGillycuddy to try to help him retain his job.  *Id*.  Carpino set up a conference call with McGillycuddy, Dick Woodward (Vice President of Enrollment Management at AUA), and Pahuja.  *Id*.  On that call, Carpino explained the services offered by the Bureau of Rehabilitation Services, such as on-the-job training and job coaching, to help an individual retain a job.  *Id*.  Carpino also asked why Pahuja had been terminated.  *Id*.  Woodward indicated that there was no specific reason for the termination, and that AUA liked Pahuja personally, but that his employment was "not working out."  *Id*.  Woodward added that AUA had believed at the time it hired Pahuja that he had more managerial experience than he turned out to have, and that such experience had been important to AUA in filling Pahuja's position.  *Id*.

### C.  Procedural History

####     1.  Pahuja's Complaint with the New York State Division of Human Rights ("SDHR")[1]

On July 22, 2009, Pahuja filed a complaint with the New York State Division of Human Rights.  He accused AUA of unlawfully discriminating against him based on his disability, sexual orientation, and marital status, all in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").  SDHR Det. 1.

After conducting an investigation, the SDHR found no grounds to support the claims.  *Id.* at 3–4.  The SDHR found no evidence of discrimination based on Pahuja's disability and need for accommodations, and, indeed, insufficient evidence that McGillycuddy knew of Pahuja's disability or request that it be accommodated.  *Id* at 2–3.  The SDHR also found, for several reasons, that Pahuja had altered an important piece of evidence he submitted—the May 5, 2009 email from him to McGillycuddy—to create the false impression that he had notified McGillycuddy of his disability and had made a written request for an accommodation.  *Id.* at 2.  First, the SDHR noted, the subject line and body of the email concerned a conference, but the email abruptly changed course to conclude with the words, "and wanted to inform you that I have a learning disability that requires an accommodation."  *Id*.  The "disjointed nature" of this sentence, the SDHR stated, suggested that the phrase regarding the disability was added after the fact.  *Id.*  Second, the SDHR stated, McGillycuddy's response to that email was "Excellent! Thanks, Rajeev," but this response would have made "little sense" had the phrase alerting McGillycuddy to Pahuja's disability been in the original email.  *Id*.  Finally, the SDHR noted,

---

[1] The SDHR's determination appears at Exhibit B of the Affirmation of Leonard A. Sclafani, Esq. in Support of Motion to Dismiss, Dkt. 19 ("SDHR Det.").  Pahuja has not disputed that he filed a complaint with the SDHR or that it made the determinations recited here.

AUA had furnished it with a copy of the original email from AUA, and that version, tellingly, did not include the language notifying AUA of Pahuja's disability or requesting an accommodation.  *Id*.

In rejecting Pahuja's claim, the SDHR concluded that AUA had articulated "legitimate and non-discriminatory business reasons, neither demonstrably pretextual nor otherwise unworthy of credence," for terminating Pahuja's employment.  These included: (1) his inappropriate work behavior towards co-workers and students; (2) his failure to develop a rapport with other staff; (3) his discussions in the workplace of his poor relationship with his family; (4) his discussions in the workplace of his deficient sex life; (5) his statements that he was interested in dating AUA students and employees; (6) his inability to perform his duties in a timely and proper manner; and (7) his lack of skills and experience necessary to fulfill the position's duties.  *Id*. at 3.

Pursuant to the SDHR determination, Pahuja had 60 days after service to appeal to the New York State Supreme Court and 15 days to request a review of his ADA charge with the EEOC.

## 2.  Plaintiff's Filing with the Equal Employment Opportunity Commission

On July 22, 2009, Pahuja filed a charge with the EEOC regarding AUA's alleged discriminatory conduct.   Compl. 3; *see also* EEOC Notice.  On or about March 31, 2011, the EEOC adopted the findings of the SDHR.  *Id.*  On April 5, 2011, Pahuja received the EEOC's Notice of Right to Sue letter.  It informed him of his right to file a lawsuit, within 90 days, against AUA in federal or state court.  *Id*.

### 3.  Pahuja's Complaint in this Court

On June 24, 2011, within the 90-day limit provided by the EEOC, Pahuja filed this

Complaint.  He brings claims against AUA, under the ADA and NYCHRL, for (1) terminating

his employment, (2) failing to accommodate his disability, (3) maintaining unequal terms and

conditions of employment,[2] and (4) retaliation.  On August 3, 2011, a service package was

mailed to Pahuja by the U.S. Marshal.  After Pahuja requested extra time to serve his Complaint,

the Court gave him until January 8, 2012 to serve the Complaint.

On February 22, 2012, AUA, the defendant, was served.  The deadline for AUA to

answer or move against the Complaint was March 14, 2012.  On May 25, 2012, this Court issued

an order directing AUA, which had not yet done so, to do so by June 15, 2012, or risk a default

judgment in favor of Pahuja.  On June 15, 2012, AUA filed its motion to dismiss.  On July 31,

2012, Pahuja filed his opposition to AUA's motion to dismiss.  On August 9, 2012, AUA

submitted its reply.  Pahuja submitted a sur-reply on August 23, 2012.

## II.  Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts

"to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More

---

[2] In Pahuja's form complaint, he checked the box alongside "unequal terms and conditions of employment," but he has not elaborated any further on this claim, either in the documents submitted along with the Complaint or in his submissions in opposition to the motion to dismiss. The Court therefore considers this claim withdrawn.  *See Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 519 (S.D.N.Y. 2010).  In any event, Pahuja's claim of unequal terms and conditions of employment, devoid as it is of any detail or explanation, falls far short of meeting the required pleading standards.

specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

A final relevant principle is that a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, the Court should interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). But, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Id.* at 474–75; *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) ("[*P*]*ro se* complaints must contain sufficient factual allegations to meet the plausibility standard.").

## III.   Discussion

AUA moves to dismiss on five distinct grounds. Regrettably, in making these arguments, AUA's brief is devoid of any citations to case law. Instead, AUA cursorily sets out its bases to dismiss, with no reference to legal authority. The Court expects AUA, in the future, to take much more seriously its responsibility to provide the Court with competent legal submissions containing citations to relevant authority.

Specifically, AUA argues that (1) Pahuja failed to join a necessary and indispensable party—GCLR LLC, Def. Br. 2; (2) Pahuja did not effect due and proper service upon AUA or any other relevant entity, *id.* at 3; (3) Pahuja did not commence his action against AUA within 90 days of the EEOC's decision, and did not serve the summons and complaint within 120 days, *id.*

8

at 4; (4) Pahuja elected to adjudicate his claims in the SDHR and EEOC and is, therefore, barred from bringing these same claims in federal court, *id.* at 5; and (5) Pahuja fails to state a claim of retaliation, *id.* at 6.  The Court addresses these arguments in turn.

**A.  Failure to Join a Necessary and Indispensable Party**

AUA argues that Pahuja was employed and terminated by GCLR, LLC, not by the entity Pahuja calls "American University of Antigua c/o Greater Caribbean Learning Resources," referred to here as AUA.  AUA represents that Greater Caribbean Learning Resources is a "defunct Delaware limited liability company that, in 2008, long before plaintiff was hired or fired, sold its assets in an arms [*sic*] length sale to GCLR, LLC, a New York limited liability company, and was dissolved by its owners."  *Id.* at 2. AUA further represents that "GCLR, LLC is not a successor in interest of Greater Caribbean Learning Resources; nor is it a subsidiary or affiliate of that entity."  *Id.*

These arguments do not support dismissal under Rule 12(b)(6).  AUA may yet prove that GCLR, LLC, and not the entity named as the defendant here, was Pahuja's employer.  But on the pleadings, Pahuja's claim that AUA was his employer must be assumed to be true.  Further, various materials from his employer which Pahuja has submitted to the Court and which are fairly considered as part of his *pro se* pleading are consistent with his claim that that employer was AUA.  First, Pahuja's offer letter from McGillycuddy describes his position as the "Senior Associate Director of Admissions of the Nursing School at the *American University of Antigua*." Pl. Br. Ex. 1 (Offer Letter) (emphasis added).  The offer letter also contains a logo at the top reading, "American University of Antigua College of Medicine" and, just below, "C/O Greater Caribbean Learning Resources."  These materials make plausible Pahuja's claim that his employer was the entity he has sued.  Second, the job listing that McGillycuddy posted in

9

attempting to fill Pahuja's position after his termination also lists "American University of Antigua, College of Medicine (NYC Office)" as the employer.  Pl. Sur-Reply Ex. 1 (Job Listing). Third, Pahuja's SDHR action was against "American University of Antigua, C/O Greater Caribbean Learning Resources."  Def. Br. Ex. B.  Although the named respondent in that action was the same here, defendant actively participated—on the merits—in two SDHR conferences and discovery in that case, without, apparently, asserting that Pahuja had sued the wrong entity. Notably, AUA's attorney before the SDHR, Leonard A. Sclafani, Esq., is the same attorney who represents AUA here.

For these reasons, Pahuja's claim that he was employed by the entity whom he has sued is satisfactorily, *i.e.*, plausibly, pled.  AUA is at liberty to attempt to prove otherwise, either at summary judgment or at trial, but its motion to dismiss on the pleadings for failure to join a necessary and indispensable party is denied.

### B.  Failure to Effect Due and Proper Service

AUA next argues that Pahuja failed to make proper service upon it.  That argument is frivolous.  AUA argues that although the United States Marshal Service effected service upon it at "2 Wall Street, 10th Fl., New York, New York" on February 12, 2012, because AUA had moved its offices from that location in mid-September 2011, it was not properly served.  But the Marshal Service executed service by mail on February 22, 2012, and service was accepted on behalf of AUA by AUA's attorney, Leonard Sclafani.  Dkt. 15.

Moreover, subsequent events refute AUA's contention.  On May 25, 2012, this Court ordered AUA, after it had been sued, to respond to the Complaint by June 15, 2012.  The order so directing this was mailed—with return receipt requested—to the same address at which the Marshals executed service.  Dkt. 16.  On May 30, 2012, this Court received the return receipt.

And on June 15, 2012, AUA then appeared and filed the instant motion.  AUA's conduct confirms both the validity of the address utilized by Pahuja and the Marshal Service and that the defendant had notice of this action.

In any event, "a plaintiff's reliance upon service by the United States Marshals, combined with actual notice of the lawsuit by defendant, may also excuse a failure to effect timely service under Fed. R. Civ. P. 4(m)."  *G4 Concept Mktg. v. Mastercard Int'l*, 670 F. Supp. 2d 197, 199 (W.D.N.Y. 2009) (citing *Jaiyeola v. Carrier Corp.*, 73 F. App'x. 492, 494 (2d Cir. 2003)).  Accordingly, the motion to dismiss for failure to effect proper service is denied.

### C.  Failure to Commence an Action Within 90 Days After the EEOC Decision and Failure to Serve Summons and Complaint Within 120 Days

AUA next argues that Pahuja's claim must be dismissed because he purportedly failed to commence this action within 90 days of the EEOC's decision.  That claim, too, is demonstrably wrong.  On April 5, 2011, Pahuja received the EEOC's Notice of Right to Sue letter, which informed him of his right to file a lawsuit against AUA within 90 days.  On June 24, 2011, well within the 90-day limit provided by the EEOC, Pahuja filed this Complaint.  AUA's motion on this ground is, therefore, denied.

AUA alternatively argues for dismissal under Federal Rule of Civil Procedure 4(m), which provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The Court finds this argument, too, unpersuasive.  Pahuja, with assistance from the Pro Se Office and the Marshal Service, demonstrably attempted to

effect service upon AUA within the original service period.  *See* Dkt. 9 & 11.  And, where the defendant has actual notice of the lawsuit and a plaintiff has relied upon the U.S. Marshals in effecting service, a failure to effect timely service under Fed. R. Civ. P. 4(m) may be excused.  *G4 Concept Mktg.*, 670 F. Supp. 2d at 199 (citing *Jaiyeola v. Carrier Corp.*, 73 F. App'x. at  494).  Further, Pahuja notified this Court, in a letter dated November 2, 2011, that he would be unable to serve AUA within 120 days due to a power outage caused by Hurricane Irene, and the Court granted Pahuja an extension of time to serve AUA.  Despite Pahuja's admitted delay in effecting service, therefore, on the record, it cannot be said that Pahuja "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and . . . advanced no cognizable excuse for the delay."  *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007).

Moreover, even where a plaintiff fails to effect service within 120 days of filing the Complaint, that is not the end of the inquiry.  Under the Advisory Committee Notes to Rule 4(m), courts may "relieve a plaintiff of the consequences of an application of [the rule] even if there is no good cause shown . . ., for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."  Fed. R. Civ. P. 4(m) Advisory Committee's Note (1993 amendments).  In deciding whether to exercise this discretionary authority, courts consider, as relevant factors, "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request

for relief from the provision." *Filéccia v. City of New York*, No. 10 CV 889 (ARR) (RML), 2011 WL 4975313, at *4 (E.D.N.Y. Sept. 23, 2011) (quoting *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006) (citations omitted)); *see also Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999).

Those factors, taken together, favor the *pro se* plaintiff here and counsel against dismissal. With respect to the first factor, "courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." *Carroll v. Certified Moving & Storage Co., LLC,* No. 04 CV 4446 (ARR), 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 109 (S.D.N.Y. 2000)). Indeed, "this factor alone may be sufficient to justify extending the time for service." *Beauvoir*, 234 F.R.D. at 58 ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action. . . .") (citing Advisory Committee Notes to Rule 4(m)). Here, Pahuja's action would be barred from refiling because, by now, the EEOC's 90-day right to sue has long since expired.

As to the second factor, as its actions reveal, AUA has had actual notice of Pahuja's Complaint. AUA responded to this Court's order that it answer the Complaint. And, of course, AUA had already litigated this matter in the SDHR, and was presumably on notice that adverse EEOC decisions may form the basis of a lawsuit in federal court. *See* Def. Br. 5.

The third factor is inapplicable here, as there is no evidence that AUA attempted to conceal the alleged defect in service.

Finally, as to the last factor, district courts are "to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service." *Zapata*, 502 F.3d at 198.  AUA has not shown any such prejudice.  It has not, for example, pointed to the disappearance of evidence that might have existed had Pahuja effected service earlier.  There is no basis to conclude that subjecting AUA to this lawsuit now is unfair at all, let alone so unfair as to outweigh the factors favoring an extension, particularly in light of the Second Circuit's preference for deciding cases on the merits.  *See DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 67 (S.D.N.Y. 2010) (citing *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)).  Accordingly, AUA's motion to dismiss on these grounds is also denied.

### D.  Election of Remedies

AUA next argues that, because Pahuja chose to adjudicate his claims in front of the SDHR and the EEOC, he is barred from bringing his NYCHRL and ADA claims in federal court.  The Court addresses these claims in turn.

### 1.  Pahuja's NYCHRL Claim

The NYCHRL's "election of remedies" provision provides that a person who files a complaint with either the SDHR or the New York City Commission on Human Rights (the "Commission") thereby waives his or her right to sue in court.  The pertinent part of the NYCHRL reads as follows:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title or by an act of discriminatory harassment or violence as set forth in chapter six of this title shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint with the city commission on human rights or with the

14

state division of human rights with respect to such alleged unlawful
discriminatory practice or act of discriminatory harassment or violence.

NYC Administrative Code § 8-502(a).

Thus, the NYCHRL squarely requires dismissal of a lawsuit if the plaintiff has first

brought a complaint before either the SDHR or the Commission.  This bar applies in federal as

well as state court.  *See York v. Ass'n of the Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir.

2002*); see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010) ("[A]

state law depriving its courts of jurisdiction over a state law claim also operates to divest a

federal court of jurisdiction to decide the claim." (citation omitted)).  The election of remedies

bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Federal

Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6).  *Moodie v. Fed. Reserve Bank*, 58 F.3d 879,

882 (2d Cir. 1995); *see also Skalafuris v. City of New York*, 437 F. App'x 54, 55 (2d Cir. 2011)

(summary order).

Accordingly, because Pahuja's filing of a claim with the SDHR operated as a waiver of

his right to sue in court under the NYCHRL, AUA's motion to dismiss Pahuja's NYCHRL claim

is granted.

## 2.  Pahuja's ADA Claim

By contrast, unreviewed state administrative proceedings do not preclude subsequently

filed lawsuits under the ADA.  *Ragusa v. United Parcel Service*, No. 05 Civ. 6187 (WHP), 2008

WL 612729, at *5 (S.D.N.Y. Mar. 3, 2008) (collecting cases), although, at the later, summary

judgment stage, courts do give "substantial" or "great weight" to factual findings made within

such prior administrative proceedings.  *Tomasino v. Mount Sinai Med. Ctr. & Hosp.*, No. 97 Civ.

5252 (TPG), 2003 WL 1193726, at *12 (S.D.N.Y. Mar. 13, 2003); *Greenberg v. N.Y.C. Transit*

*Auth.*, 336 F. Supp. 2d 225, 243 (E.D.N.Y. 2004); *see also Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (finding by an "undisputedly independent, neutral, and unbiased adjudicator" was "highly probative of the absence of discriminatory intent").  Thus, Pahuja's ADA claim is not barred by the SDHR's "no probable cause" determination.

The pertinent issue, instead, is whether Pahuja's Complaint, construed liberally, pleads sufficient facts to state a claim under the ADA that is plausible on its face, so as to survive a motion to dismiss.  Courts analyzing discrimination claims under the ADA apply the three-step burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972).  At the first stage, the burden of production rests with the plaintiff to prove by a preponderance of the evidence a *prima facie* case of discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999).  This burden is not a heavy one.  *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).  After the plaintiff has done so, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action.  *McDonnell Douglas*, 411 U.S. 792 at 802.  At that point, the burden shifts back to the plaintiff to "produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).  To survive a motion to dismiss, however, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas Corp.*" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002); *see also Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).  The elements of a *prima facie* case do, however, "provide an outline of what is necessary to render [a plaintiff's

16

employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011). Courts therefore "consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251 (LDW) (AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).

In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job; and (4) he suffered some adverse employment action because of his disability." *Barnes v. CCH Corporate Sys.*, No. 01 Civ. 2575 (AKH), 2004 WL 1516791, at *4 (S.D.N.Y. July 7, 2004) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Comm. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999)).

As to the first element, AUA does not dispute that it is subject to the ADA. As to the second, Pahuja claims to have suffered from attention deficit disorder, and AUA does not dispute that this condition constitutes an "impairment" covered under the ADA. *See* 42 U.S.C. § 12102(2) (a disability under the ADA means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). The EEOC, to which the Court defers on this issue, has concluded that such "learning disabilities" do constitute "mental impairment" under the ADA. *See* 29 C.F.R. § 1630.2(h) (defining mental impairment as including "learning disabilities"); *see generally Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) ("Because the [EEOC] is the agency that bears responsibility for implementing

17

specific provisions of the ADA, we generally defer to the EEOC regulations in construing the ADA's terms."). Nor does AUA dispute that Pahuja's learning disability substantially limits one or more of his major life activities.

As to the third element, relating to his qualification for the job, Pahuja has presented facts sufficient to plausibly allege such qualification. These include at least seven email communications between him and his supervisor, McGillycuddy, in which she praises his work. Pahuja Affidavit ¶¶ 11–18. Finally, as to the fourth element, Pahuja alleges that, as a result of the May 5, 2009 email he sent to McGillycuddy, his employer, AUA, knew of his disability and terminated him because of it. Accepting this email as authentic, as the Court concludes it must at this stage, *see* p. 19, *infra*, Pahuja has, therefore, satisfactorily pled a *prima facie* case of discrimination in violation of the ADA.

For much the same reasons, Pahuja makes out a *prima facie* case of discrimination based on AUA's alleged failure to accommodate his disability. To prevail on such a claim, a plaintiff must show that "(1) he is an individual with a disability as defined by the ADA; (2) an ADA-covered employer had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the job sought; and (4) the employer refused to make such reasonable accommodation." *Geoghan v. Long Island R.R.*, No. 06 CV 1435 (CLP), 2009 WL 982451, at *8 (E.D.N.Y. Apr. 9, 2009); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001). The first of these elements is met, for the reasons addressed above. As to the second, that AUA had notice of his disability, Pahuja's May 5, 2009 email to McGillycuddy, if treated as authentic, clearly provides notice to her of his learning disability and asks AUA to accommodate it. Pahuja Affidavit ¶ 19. To be sure, AUA articulated before the SDHR substantial reasons to doubt its authenticity, but on a motion to dismiss, in which only the

18

materials in or fairly appended to the Complaint are cognizable, *see Swierkiewicz*, 534 U.S. at 508 n.1, the Court cannot determine as a matter of fact that the email as presented by Pahuja was doctored or that his claim as to its integrity, given the limited materials of which the Court can take note, is implausible.  *See Three Five Compounds, Inc. v. Scram Techs.*, Inc., No. 11 Civ. 1616 (RJH), 2011 WL 5838697, at *13 (S.D.N.Y. Nov. 21, 2011).  Consequently, this Court concludes that Pahuja has adequately pled notice on AUA's part.

As to the third element of a failure-to-accommodate claim, Pahuja alleges that, "although [his] learning disability adversely impacts his major life activities, including work and training, [he] has been able to overcome his impairment when provided a reasonable accommodation." Pahuja Affidavit ¶ 25.  He has supported this claim with the seven emails between him and his supervisor, McGillycuddy, containing praise for his work.  *Id.* ¶¶ 11–18.  The materials together are enough to plausibly allege that Pahuja, with reasonable accommodation, could perform the essential functions of his job.  Finally, as to the fourth element, Pahuja alleges both that McGillycuddy ignored his request for an accommodation and that AUA's employee handbook lacks an "effective procedure in the GLCR, AUA, Manipal Education Americas employee handbook to request a reasonable accommodation for an employee suffering from a disability." Pl. Br. 19–20.  Pahuja also alleges that McGillycuddy "refused to look at the medical documentation" from his medical provider, which confirmed his learning disability.  *Id.* at 20. These allegations suffice to plead, plausibly, the fourth element.

For those reasons, Pahuja plausibly pleads an ADA violation, based either on a discriminatory termination or a failure-to-accommodate theory.  AUA's motion to dismiss Pahuja's ADA claim is, therefore, denied.

19

### E.  Failure to State a Claim for Retaliation

AUA also seeks dismissal of Pahuja's claim that his discharge was the product of unlawful retaliation for protected conduct under the ADA.  Under the ADA, it is unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  To make out a *prima facie* case of retaliation, the plaintiff must establish that: "1) []he engaged in a protected activity; (2) [his] employer was aware of this activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

To plead a plausible claim of retaliation on a motion to dismiss, however, a plaintiff need not specifically plead every element of a *prima facie* case.  A plaintiff need only allege facts that could establish a causal nexus between a protected activity and the adverse employment action. *See Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (affirming dismissal of retaliation claim where plaintiff failed to allege facts supporting an inference of a causal connection); *Williams v. Time Warner Inc.*, No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *6 (S.D.N.Y. Mar. 3, 2010) (where no inference of causation arises, plaintiff's retaliation claims fail to meet the plausibility threshold).  But here, Pahuja has not alleged any facts that could plausibly support an inference that protected activity on his part caused his termination.  Indeed, he has failed even to allege any specific protected activity he engaged in prior to his termination that he asserts precipitated that termination.  Notably, Pahuja has not alleged that he opposed any

20

unlawful practice on the part of AUA, or otherwise engaged in protected activity, prior to his termination.

Pahuja's reliance on the conversation his rehabilitation counselor, Carpino, had with McGillycuddy and Woodward seeking reasonable accommodations, Pl. Br. 14, does not rescue his retaliation claim.  As pled, that conversation transpired *after* Pahuja was already terminated, and indeed was precipitated by Pahuja's distress at the termination.  *See* Carpino Letter ("[T]his conference call was arranged in follow-up to a phone call that I had received from Raj Pahuja earlier that day indicating that he was being terminated from his job . . . .").  It is, therefore, beside the point whether, as Pahuja alleges, AUA had "no effective procedure . . . to request a reasonable accommodation for an employee suffering from a disability."  Pl. Br. 15.  Pahuja does not allege that he had opposed such a deficient procedure before his termination, and the fact that AUA, as alleged, had deficient procedures does not, without more, establish a plausible claim of retaliation.  For this reason, AUA's motion to dismiss Pahuja's claim for retaliation is granted.

## CONCLUSION

For the foregoing reasons, the Court grants AUA's motion to dismiss Pahuja's claims based on the NYCHRL and his claim of retaliation.  However, as to Pahuja's claims under the ADA for discrimination and failure to accommodate, AUA's motion to dismiss is denied.

The next step in this case is for discovery to commence.  In the Court's assessment, the most efficient path is to direct the parties to undertake discovery solely, for the time being, on the issue of whether Pahuja's May 5, 2009 email is authentic.  The Court affords counsel two months, *i.e.*, until February 17, 2013, to complete discovery on that point.  In particular, the Court directs the parties, and particularly AUA, to adduce admissible evidence as to the authenticity of the email in the form presented by Pahuja.  Particularly useful evidence would

come from an examination of stored emails from May 5, 2009, as reported to the Court in a

sworn affidavit from the person who conducted that examination. Following such targeted

discovery, the Court will then entertain a motion for summary judgment by AUA as to the

authenticity of that email. In the event summary judgment is granted to AUA on that point, *i.e.*,

the Court finds that no reasonable juror could conclude that that email is authentic, the Court will

then dismiss Pahuja's remaining claims, because both his discrimination and failure to

accommodate claims under the ADA turn on whether the sentence in that email reporting his

disability was actually present in the email as sent to McGillycuddy.

The parties are directed to appear in person for an initial pretrial conference before this

Court on January 17, 2013, at 3:00 pm at the U.S. Courthouse, 500 Pearl Street, New York, New

York, 10007. In advance of the conference, the parties are further directed to confer with each

other and to prepare a Civil Case Management Plan and Scheduling Order in accordance with

this Court's Individual Rules and consistent with this decision. Defendant's counsel is directed

to initiate communication with Pahuja to create the joint Case Management Plan and Scheduling

Order and, upon such agreement, to furnish it to the Court no later than five business days before

the conference date. Defendant's counsel is also directed to serve Pahuja with a copy of this

Opinion and Order forthwith, and thereafter to enter an affidavit of service on ECF.

The Clerk of Court is directed to terminate the motion at docket number 17.


SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge


Dated: December 18, 2012
        New York, New York

22