UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RAJEEV PAHUJA,

Index #11 Civ.
4607(PAE)

**AFFIRMATION OF
LEONARD A. SCLAFANI, ESQ. IN
COMPLIANCE WITH THE ORDER
OF JANUARY 17, 2013
REGARDING PRESERVATION OF
DISPUTED EMAILS**

                                        Plaintiff

        -v.-

AMERICAN UNIVERSITY OF ANTIGUA c/o
GREATER
CARIBBEAN LEARNING RESOURCES,

                                        Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ---X

Leonard A. Sclafani, Esq. hereby affirms under penalty of perjury as follows:

1.      I am an attorney duly admitted to practice before this Court. I am the sole

member of the firm of Leonard A. Sclafani, ESQ., attorneys for defendant American

University of Antigua c/o Greater Caribbean Learning Resources. As such, I am fully

familiar with all of the facts and circumstances surrounding this matter and

hereinafter set forth.

2.      I submit this affirmation in compliance with the Court's Order of January 17, 2013

directing that I provide the Court with a statement as to how I insured the

preservation of the emails that are subject of the Decision and Order of December

18, 2012 herein. In this regard, I attest as follows:

1

3. In late July 2009, on learning through receipt of plaintiff's complaint in the
administrative proceedings before the NY State Division of Human Rights that
plaintiff was claiming that he had given notice of his claimed disability to Ms.
McGillycuddy, his supervisor at his former employer, GCLR, LLC (hereinafter, "the
company") via an email sent on May 5, 2005 that he attached to his complaint, I
showed Ms. McGillycuddy a hard copy of that email and her purported email of the
same date responsive to it that I had extracted from the plaintiff's complaint, and
asked if she had received it. She immediately stated that she had received and
responded to plaintiff's email as and when it indicated that plaintiff and she had sent
them; but that the email that she had received and responded to did not contain the
statement that plaintiff was suffering from a disability for which he required an
accommodation that appeared on the copy of the email that plaintiff had attached to
his NYSDHR complaint.

4. I asked Ms. McGillycuddy to produce for me the actual email that she received and
to which she had responded and she did so within minutes.

5. Upon observing that what Ms. McGillycuddy had advised about difference between
the email exchange between she and plaintiff and email exchange that plaintiff
included in his complaint was borne out by that which she produced for me, I
directed that she preserve that actual email exchange, and to make or suffer to be
made no alteration of it.

6. I gave similar directions to Ms. McGillycuddy's supervisor, Richard Woodward,
then the company's Vice President of Enrollment Management, and to the head of

the company's Information Technology department, Vice President of Information

Technology and Chief Information Officer, Tom Gardner.

7.   I impressed upon all three the need and importance of preservation of the emails at

issue.

8.   Both in compliance with my instruction and pursuant to the policies and practices of

the company on record retention and, in particular, email preservation and

retention, the May 5, 2009 emails were preserved and protected as follows;

1.  Ms. McGillycuddy's e mailbox and all data and contents therein for the period
    of time that included May 5, 2009 was backed up and archived onto a hard
    drive. The hard drive contains the original unaltered email sent by plaintiff in
    its original form and all associated metadata and characteristics thereof. It
    also contains Ms. McGillycuddy's response to plaintiff's email with all its
    associated metadata and other characteristics.  The hard drive is in the
    possession, custody and control of Mr. Gardner's IT department.
2.  Mr. Gardner and his immediate report, Allen DePena, Director of Information
    Technology advised me that, as per the practice and policy of the company,
    the company's email server database which included the mailboxes and
    contents of all employees of the company, including, for the relevant period
    of time (the month of May, 2009), the mailboxes and their contents of
    plaintiff and of Ms. McGillycuddy were backed up onto a storage tape.  That
    tape was stored in a locked safe located in the office of Mr. DePena and to
    which only he had, and has, access.
3.  Mr. Gardner and Mr. DePena advised me that, in addition to the preservation
    of the emails on the hard drive and tape, the originals of the emails would be
    preserved on the company's mail server itself. In October 2009, Mr. DePena
    decommissioned the email server; however, rather than wipe it clean and
    dispose of it, he stored it in a locked storage cabinet in the company's server
    room. Only Mr. Gardner, Mr. DePena and their subordinates in the IT
    department had access to the server room and to the cabinet.

9.   Upon learning that plaintiff had commenced the within action, I advised each of Mr.

Woodward, Ms. McGillycuddy, Mr. Gardner and Mr. DePena of the lawsuit. I insured

by inquiry of each of Ms. McGiillicuddy, Mr. Gardner and Mr. DePena that the emails

at issue were still being stored and preserved as above stated and reiterated my

instruction and as to the importance of insuring that they remain preserved and unaltered as they constituted important evidence in the lawsuit.

10. I have worked closely with all of the above named employees of the company and know that they are both trustworthy and competent to carry out the instructions that I had given.  They each have assured me that they have done all in their power to insure that the emails at issue were preserved and remain unaltered from the first date that I advised them to do so (and in the case of Ms. McGillycuddy, from the point that she received and sent the emails).

Dated: January 24, 2013

Leonard A. Sclafani, Esq.